## Richmond

JOHN W. SAUNDERS v. G. A. REYNOLDS, DIRECTOR CORRECTIONAL FIELD UNIT No. 9.

April 22, 1974.

Record No. 730200.

Present, All the Justices.

JeRoyd W. Greene, Jr. (Robert P. Geary; Greene & Poindexter, on brief), for petitioner.

Gilbert W. Haith, Assistant Attorney General (Andrew P. Miller, Attorney General, on brief), for respondent.

SNEAD, C.J., delivered the opinion of the court.

On June 14, 1972, petitioner, John W. Saunders, was convicted by the Circuit Court of Henrico County of distributing a controlled drug and was sentenced to serve fifteen years in the State Penitentiary with eight years suspended. He filed a petition for a writ of error, which was refused by this court on February 5, 1973. Thereafter, he filed in this court his original petition for a writ of habeas corpus. Because of the importance of the issues, we granted the parties leave to file briefs and to present oral argument.

Petitioner raises three questions for our consideration. The first is, "Whether the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires petitioner to be granted a writ of error by this Court."

Code § 19.1-282 provides in part:

"A writ of error shall lie in a criminal case to the judgment of a circuit court or the judge thereof, or of a corporation court, or of a hustings court, from the Supreme Court of Appeals."

Petitioner argues that the statute is mandatory and requires, consistent with the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, that he be granted a writ of error from his conviction as a matter of right.

In *Peyton* v. *King*, 210 Va. 194, 169 S.E.2d 569 (1969), we had occasion to interpret the meaning of § 19.1-282. There we said:

"The appellate jurisdiction of this court is provided by Section 88 of the Constitution. With respect to such jurisdiction, however, Section 88 is not self-executing but merely bestows upon this court the capacity to receive appellate jurisdiction. The jurisdiction is received when conferred by the legislature. *Rudacille* v. *State Commission*, 155 Va. 808, 817, 156 S.E. 829, 832 (1931).

"Code § 19.1-282 is executory of Section 88 and confers upon this court the appellate jurisdiction in criminal cases called for by the Constitution. That is all the Code section pretends to do. The provision that a writ of error shall lie in any criminal case for the accused grants only the right to seek to invoke such appellate jurisdiction and does not mean that the jurisdiction may be invoked in every case. . . ." 210 Va. at 197, 169 S.E.2d at 571-72.

Section 88[1] of the Constitution of Virginia (1902) has been replaced by Article VI, Section 1[2] of the Constitution of Virginia (1971).

Article VI, Section 1 has the same effect as Section 88; it "merely bestows upon this court the capacity to receive appellate jurisdiction." Section 19.1-282 is now executory of Article VI, Section 1 in conferring upon this court appellate jurisdiction. We give § 19.1-282 the same interpretation we expressed in *Peyton, viz.*, that it "grants only the right to seek to invoke . . . appellate jurisdiction and does not mean that the jurisdiction may be invoked in every case." *See also Smith* v. *Commonwealth*, 161 Va. 1112, 1115, 172 S.E. 286, 287 (1934).

Petitioner urges that our interpretation of § 19.1-282 in *Peyton* constitutes a deprivation of his right to due process as guaranteed by the Fourteenth Amendment to the Constitution of the United States. However, the Supreme Court of the United States has held that the right to appellate review is not a necessary element of due process. *Griffin* v. *Illinois*, 351 U.S. 12, 18 (1956); *McKane* v. *Durston*, 153 U.S. 684, 687 (1894).

We hold, therefore, that the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States does not require that the petitioner be granted a writ of error as a matter of right. *See McCue* v. *Commonwealth*, 103 Va. 870, 1008, 49 S.E. 623, 632 (1905).

■ The next question petitioner poses is, "Whether the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution is violated by the procedure of this Court in granting writs of error to some convicted felons and refusing writs of error to other convicted felons."

Contending that our procedure does violate the Equal Protection Clause of the Fourteenth Amendment, petitioner asserts that where

---

1. "§ 88. Supreme Court of Appeals; composition and jurisdiction.—. . . .
* * *
"Subject to such reasonable rules as may be prescribed by law as to the course of appeals, the limitation as to the time, the value, amount or subject matter involved, the security required, if any, the granting or refusing of appeals, and the procedure therein, it shall, by virtue of this Constitution, have appellate jurisdiction in cases involving the constitutionality of a law as being repugnant to the Constitution of this State or of the United States, or involving the life or liberty of any person; and in such other cases as may be prescribed by law. . . ." [1928 revision].

2. Article VI, Section 1 reads in part:
"Subject to such reasonable rules as may be prescribed as to the course of appeals and other procedural matters, the Supreme Court shall, by virtue of this Constitution, have appellate jurisdiction in cases involving the constitutionality of a law under this Constitution or the Constitution of the United States and in cases involving the life or liberty of any person."

a state provides an appeal process for persons convicted of crimes, persons similarly situated must be treated alike. Additionally, petitioner says that the standard of discretionary review applied by this court, *viz.*, that no appeal will be refused where there is shown to have existed substantial possibility of injustice, has shifted from a determination on the merits to a determination based upon societal importance. For this reason, he contends that the Equal Protection Clause of the Fourteenth Amendment is violated.

In support of his allegation, petitioner relies upon statements of Graham C. Lilly and Antonin Scalia in an article entitled *Appellate Justice: A Crisis in Virginia?*, 57 Va. L. Rev. 3 (1971). In their article, the authors quote statistics showing, among other things, the rapid increase in recent years in the number of petitions filed in this court and the decrease in the percentage of petitions granted. The authors state that "the statistics suggest that in the face of its increasing workload the Court has altered the criterion for granting appeals, so that a denial can no longer be considered a 'merits' determination." 57 Va. L. Rev. at 14. The authors further observe that the court's increased burden, instead of reflecting a substantially increased backlog, has resulted in a decreasing percentage of appeals granted. They state that this could have been accomplished only by the failure of the court to apply strictly the merits standard of discretion or by the complete abandonment of that standard in favor of a test tied to the societal importance of the issues. In any event, the authors conclude, the court now refuses to review cases in which it once would have considered that substantial possibility of error existed.

We readily acknowledge that the increased number of petitions filed in recent years has created a greater burden for this court. We cannot agree, however, that this burden, or anything else, has caused us to depart from our traditional merits standard of discretion in favor of some other test. The societal importance of the issues presented may, and properly should, play some part in the decision to grant a petition, but that has always been true, given the role of this court in matters of general application. This is certainly not to say, however, that societal importance is a controlling consideration or that a petition would be refused simply because it lacked such importance.

We state unequivocally that a decision to grant or refuse a petition for writ of error is based upon one equally-applied criterion—the merits of the case. Indeed, in view of the thorough consideration we give each petition, we are quite unwilling to concede the validity of

the proposition that we now refuse to review cases in which we once would have thought there existed substantial possibility of error.

We recognize that, along with the increased number of petitions filed, there has been what might appear a disproportionate decrease in the percentage of petitions granted. We know, however, the cause of the apparent imbalance—the increase in the number of *frivolous* petitions presented. This situation is the proximate result of newly-enunciated constitutional principles and the extension of rights of the indigent defendant who, merely upon his statement that he desires an appeal from the judgment of conviction, is now entitled to seek an appeal notwithstanding the obvious lack of merit of his claims.

Our views are based in large part upon the actual day-to-day operations of this court. With respect to those operations, we take judicial notice. To the extent, however, that our views may be the result of our subjective knowledge of the situation, we note that they find support in the objective findings of others.

Commencing in July 1972, the National Center for State Courts has sponsored the Appellate Justice Project to study appellate procedure, to render assistance in the processing of appeals, and to make recommendations for appellate reform. This court was one of four appellate courts in the nation selected for the program. Professor Graham C. Lilly[3] was appointed Staff Director and Reporter for the Virginia project, in which several staff attorneys also participated.

Professor Lilly has prepared a report, dated February 18, 1974, on the project's exhaustive study of this court. In his report, Professor Lilly states several conclusions. With reference to our once-unquestioned standard that an appeal will be granted in every case where there exists substantial possibility of injustice in the court below, he observes in footnote 36, under the heading of "The Nature of the Caseload and Workload":

> "The justices indicate that this standard still prevails. The Appellate Justice Staff saw no evidence to the contrary, although the statistics indicating a decline in the percentage of petitions granted gave rise to an inference that the standard of review has changed. . . . In fact, this decline in percentage may be attributable to a larger number of frivolous appeals."

Under the heading of "Decision on the Petition," in footnote 36, Professor Lilly states:

---

3. Professor Lilly was co-author of *Appellate Justice: A Crisis in Virginia?, supra.*

"The staff concluded that insofar as it was able to observe the process of decision making, the justices conducted a thorough merits review." [4]

Under our procedure, a convicted felon whose case has merit is granted a writ of error. On the other hand, a convicted felon whose claims lack substance is refused a writ. So long as we adhere, as we do, to a merits review of each petition for writ of error, there is no denial of equal protection to the felon whose petition is refused because it is without merit. In such circumstances, the two felons are not similarly situated and they need not, therefore, be treated alike to the extent that each must be granted a writ regardless of the merits of his claims. Accordingly, we hold that our procedure of granting a writ of error to one felon and refusing it to another is not violative of the Equal Protection Clause.

The final question petitioner presents is, "Whether the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution is violated by the procedure in which a person convicted of a misdemeanor in a court not of record is given an automatic appeal to a higher court while a person originally convicted in a court of record has no such automatic right of appeal to a higher court."

Here, the gist of petitioner's argument is that there is created an "unreasoned distinction" in the Virginia procedure, a procedure which, on one hand, provides a misdemeanant an appeal of right to a court of record from a conviction in a court not of record and, on the other hand, provides a felon only a discretionary review by this court from his conviction in a court of record. Similar distinctions between misdemeanors and felonies, petitioner asserts, were struck down in *Groppi* v. *Wisconsin*, 400 U.S. 505 (1971), which involved the right to move for a change of venue, and *Mayer* v. *Chicago*, 404 U.S. 189 (1971), which involved the right to trial transcript. Petitioner further relies upon the United States Supreme Court case of *Rinaldi* v. *Yeager*, 384 U.S. 305, 310 (1966), wherein it is said:

"This Court has never held that the States are required to establish avenues of appellate review, but it is now fundamental that, once established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts. *Griffin* v. *Illinois*, 351 U.S. 12; *Douglas* v. *California*, 372 U.S. 353...."

4. Although Professor Lilly's report is yet unpublished, it is in the hands of the printer and the portions quoted herein are from the final draft.

Admittedly, there are distinctions in Virginia law between felonies and misdemeanors. But, with respect to our appellate procedure, the distinctions either do not exist or, where they do, they are based upon well-reasoned objectives which serve a legitimate state interest and protect the constitutional rights of defendants convicted of crime. We believe, therefore, that the cases relied upon by petitioner are not applicable to the case at bar.

The writ of error procedure applicable in this court provides for an initial determination, based upon the petition for writ of error filed by the defendant and upon the proceedings in a court of record, whether there exists substantial possibility that error has been committed in the conviction of the defendant by such court of record. If that substantial possibility appears to exist, a writ is granted; if it does not, a writ is refused.

Under this procedure, all persons convicted of crime in a court of record have equal access to this court. The right of a defendant to seek an appeal to this court is unaffected by the classification of his crime as felony or misdemeanor. The right is the same regardless of the classification, and whether a writ of error is granted or refused is determined by the same standard in both felonies and misdemeanors —the merit or lack of merit of the particular case. So, whatever distinctions may otherwise exist between felonies and misdemeanors, no distinction impedes the "open and equal access" to this court by persons convicted of a crime.

The procedure applicable to a misdemeanant convicted in a court not of record provides for an appeal of right and a trial *de novo* in a court of record. (Code §§ 16.1-132, -136). Under this procedure, a misdemeanant is entitled to a trial *de novo* regardless of whether error was committed in his trial in the court not of record. To this extent, there is a distinction in our procedure between a misdemeanant with respect to his first appeal and a felon with respect to his first quest for appellate review. However, there is a rational objective, serving both a legitimate state interest and the rights of defendants, for that distinction.

The courts not of record are instituted to handle with the greatest possible dispatch the numerous misdemeanors which constitute the bulk of criminal cases occurring in this state. To serve the state's objective of expeditious disposition of cases, trial by jury is not provided in courts not of record. However, to protect the misdemeanant's right to trial by jury, he is specially granted an automatic appeal from

a court not of record and a trial *de novo* in a court of record, where a jury trial is available to him. *See Manns* v. *Commonwealth*, 213 Va. 322, 324, 191 S.E.2d 810, 812 (1972).

These considerations do not apply, however, to felony cases. A person indicted for a felony is, in the first instance, assured of his right to trial by jury in the court of record where he stands charged. So no special provision is necessary to make trial by jury available to him. Therefore, although there exists a difference between felonies and misdemeanors in Virginia's appellate procedure, the difference is not an unreasoned distinction which impedes "open and equal access to the courts."

For the foregoing reasons, we hold that petitioner is not entitled to relief by way of habeas corpus. His petition is, accordingly,

*Denied.*