**Norfolk**

KEITH ALLEN HARWARD

v.

COMMONWEALTH OF VIRGINIA

No. 0323-86

Decided January 19, 1988

470

Roy H. Lasris (Buxton & Lasris, on brief), for appellant.

Margaret Poles Spencer, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

## OPINION

**COLEMAN, J.** — This is the second appeal by Keith Allen Harward of successive convictions for the murder of Jesse Perron. The Supreme Court reversed an earlier capital murder conviction in which Harward received a life sentence on the ground that a murderer/rapist could not be found guilty under Code § 18.2-31(a) where the person murdered was other than the rape victim. *Harward v. Commonwealth*, 229 Va. 363, 330 S.E.2d 89 (1985). On remand Harward was convicted by a jury of first degree murder and sentenced to life imprisonment. We review that conviction.

Those facts and procedural history essential to address the issues will be stated. Following established principles, the evidence and all reasonable inferences fairly deducible therefrom will be considered from the viewpoint most favorable to the Commonwealth. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). The dominant issue at trial, and on appeal, is whether the circumstantial evidence was sufficient to identify Harward beyond a reasonable doubt as the perpetrator of the crime. In every criminal prosecution the Commonwealth must establish beyond a reasonable doubt all elements of the offense and that the accused did commit it. *Stover v. Commonwealth*, 222 Va. 618, 623, 283 S.E.2d 194, 196 (1984); *Inge v. Commonwealth*, 217 Va. 360, 366, 228 S.E.2d 563, 568 (1976). The evidence must exclude every hypothesis except that the accused is the criminal agent. *Turner v. Commonwealth*, 218 Va. 141, 146, 235 S.E.2d 357, 360 (1977). The appellant's additional allegations of error

are that the trial court admitted opinion evidence of forensic dentists or odontologists about bite mark identification, permitted cross examination of the defendant about other acts of biting his girlfriend, and denied a mistrial motion when a witness mentioned a "prior trial." We find no error and affirm the conviction.

In the early morning of September 14, 1982, an intruder broke into the home of Jesse and Teresa Perron located in the 4900 block of Warwick Boulevard in Newport News. The Perrons and their three children were there asleep. Teresa awakened from a loud noise and discovered the intruder at her bedside striking her husband on the head with a crowbar. The assailant pulled Teresa from her bed to the floor and pinned her there by putting his legs over hers while continuing to strike Jesse with the crowbar until he was rendered unconscious.

The intruder told Teresa that he did not want to kill her husband, but only "knock him out." He threatened Teresa that unless she did as he demanded, he would "get" her children. The assailant raped Teresa Perron, forced her to commit oral sodomy and to submit to anal sodomy. During the sexual assaults, the assailant bit Mrs. Perron on the thighs and calves of her legs leaving multiple visible bite marks. During the course of events the assailant and Teresa Perron smoked at least one cigarette each. When the intruder eventually left, Teresa Perron called the police. They arrived and found Jesse Perron dead from multiple blows to the head.

Mrs. Perron was taken to Riverside Hospital for examination where a routine PERK (Physical Evidence Recovery Kit) examination to preserve evidence was conducted. The PERK test yielded a pubic hair and swabs were taken of the thigh vulva area and of the bite marks in an effort to obtain seminal fluid and saliva for analysis. Photographs of the bite marks on Mrs. Perron's legs were made. Various items of physical evidence from the home were preserved, including the cigarette butts presumably smoked by the assailant and Mrs. Perron, a soft drink bottle handled by the intruder, the crowbar, and numerous hair samples taken from Jesse Perron's clutched hand and from other locations in the Perrons' home.

Mrs. Perron was never able to identify her assailant. She provided a general description of her assailant's size and build and

described him as a white male wearing a white sailor's uniform bearing an insignia of "three nested V's."

Upon hearing the evening news report of the murder, Donald L. Wade, a Newport News shipyard security guard, reported to the police having observed a sailor enter his gate in the early morning hours of September 14 behaving in an unusual manner, and wearing a uniform with what appeared to be blood splattered on it. Mr. Wade observed that the sailor was wearing the uniform of an E-3, that rank's insignia being three parallel slash marks. He noted that the sailor was not in proper attire because he wore no hat and his sleeves were rolled up. Wade's impression was that the sailor was oblivious to him. Gate 50 where Mr. Wade observed the sailor was close to the Perrons' home.

The investigation focused upon the personnel of the U.S.S. Carl Vinson which was docked at the gate where Mr. Wade had observed the sailor. Dental records of all E-3's assigned to the Carl Vinson were submitted for comparison with the photographs of the bite marks on Teresa Perron's legs. Similarities between the dental records of Harward and the photographs led the authorities to obtain an impression of Harward's teeth. Dr. L. J. Levine, a forensic odontologist, identified the alluwax impression of Keith Harward's teeth as having been made by the same person that left a bite mark on Teresa Perron's leg. Thereafter Donald L. Wade, the gate security guard, identified Keith Harward from a photo spread as the sailor he observed enter his gate on September 14 with a blood splattered uniform. At trial, Dr. Levine and a second forensic odontologist, Dr. A. W. Kagey, testified that they had compared the photographs of bite marks on Teresa Perron's legs with the alluwax impressions of Keith Harward's teeth. Based on general features in dentention and individual distinctive characteristics of Harward's teeth both dentists were of the opinion that Keith Harward inflicted the bites on Teresa Perron. Dr. Levine stated "[t]hat with reasonable medical certainty, Mr. Harward caused the bite marks on the leg." He demonstrated to the jury distinctive individual characteristics of Mr. Harward's teeth and features visible in the photographs which had led to his conclusion. One of Harward's teeth that "canted sideways" aligned with a bite mark in the photo, and a "hook type area" in the wax impression appeared uniquely compatible with features visible in the photograph of the bite mark. Dr. Levine also explained and dis-

played a "chipped area" and "breakage" that were present and distinctive in both the photo and the wax impression.

## I.

In Harward's first trial a former girlfriend testified for the Commonwealth that Harward had bitten her on several occasions. Before his second trial, Harward's counsel moved *in limine* to suppress evidence that Harward had bitten her because it was irrelevant and prejudicial. Although Harward contends that the trial court ruled the evidence to be inadmissible, the court's pretrial order ruled the evidence "to be admissible to the extent that such evidence relates to the propensity of the defendant to bite others under those circumstances as set forth in the record." Harward objected to that portion of the order.

At trial the Commonwealth did not call the girlfriend as a witness; instead during cross examination of Harward the Commonwealth elicited, without further objection, that on several occasions during 1982 Harward had bitten his girlfriend. After the close of the evidence and during discussion of the jury instructions, Harward's counsel objected that the Commonwealth had violated the order *in limine*. The trial court ruled that the order had not been violated. Although Harward challenges the admissibility of the evidence on relevance grounds, the question which he presented and which the trial court ruled upon was whether the Commonwealth violated the ruling *in limine*. Thus, the initial question which must be answered is whether Harward's objection to the ruling *in limine* preserved his objection to the admissibility of evidence about biting his girlfriend, or whether he was required to make a contemporaneous objection when the evidence was offered.

■ Generally, a contemporaneous objection on stated specific grounds must be made in the trial court before an appellate court is authorized to review the question of admissibility of evidence. Rule 5A:18; *Ingram v. Commonwealth*, 1 Va. App. 335, 341, 338 S.E.2d 657, 660 (1986). To be timely, an objection to the admissibility of evidence must be made when the occasion arises—that is, when the evidence is offered, the statement made or the ruling given. *Marlowe v. Commonwealth*, 2 Va. App. 619, 621, 347 S.E.2d 167, 168 (1986). Among the purposes underlying the con-

temporaneous objection rule are to enable the trial court to prevent error, to cure alleged error with prompt and decisive instruction, and to prevent compounding any harmful consequences by dwelling on irrelevant matters. Harward's counsel did not object to the question or answer from Harward when he was cross-examined about biting his girlfriend. Accordingly, the trial judge was not presented the opportunity at the time the evidence was offered to consider and rule on its relevance, and Rule 5A:18 precludes our considering its admissibility unless Harward's objection to the ruling *in limine* dispensed with the necessity of a contemporaneous objection or unless it is necessary that we address it to attain the ends of justice.

Motions *in limine* have gained wide usage and acceptance. They serve worthwhile functions of narrowing issues, preventing trial delay, avoiding expense, and promoting judicial efficiency. Their legitimate use should be encouraged. However, abuses lead to additional expense, delay, duplication of judicial and legal time and effort, and in some instances confusion. Motions *in limine* are not properly used to exact from the court nonbinding, advisory, or conditional rulings. Many issues can be definitively ruled upon pretrial. Others may more appropriately, or must by necessity, be ruled upon contemporaneously during trial. Rule 3A:9 recognizes a class of defenses and motions which *must* be raised before trial and a separate class which *may* be raised before trial. Evidentiary rulings or relevance and materiality issues usually can only be made at trial and are not contemplated within Rule 3A:9. Assuming without deciding that Rule 3A:9(b)(2) applies to the type of ruling in this case and assuming that the provisions of Rule 3A:9(b)(5)[1] relieve the requirement of a contemporaneous objection when the evidence is offered at trial, nevertheless, Rule 3A:9(b)(5) does not apply to tentative, conditional, or provisional rulings from the court of the type made here. The conditional nature of the trial court's ruling may have led to Harward's confusion about whether the court had ruled the evidence inadmissible. However, the court clearly ruled the evidence admissible, provided that the proper foundation to establish its relevance would be

---

[1] Rule 3A:9(b)(5) provides:
If a motion is determined adversely to the accused, his plea shall stand or he may plead over or, if the accused has not previously pleaded, he shall be permitted to plead. *The motion need not be renewed if the accused properly saves the point for the purpose of appeal when the court first determines the motion* (emphasis added).

presented at trial. The ruling of the trial court, in effect, was a tentative ruling that the evidence would be admissible provided its relevance was established at trial. Such circumstances require a contemporaneous objection when the evidence is offered to afford the trial court the opportunity to consider the admissibility.

Even if pretrial the trial court had ruled the evidence inadmissible, as Harward argues, counsel can not sit in silence and permit evidence to be introduced contrary to the court's ruling. To do so invites error without affording the trial court the opportunity of knowing whether counsel continues to consider the evidence objectionable. If, however, the ruling was, as we hold, that the evidence was provisionally admissible, Harward was required to state his objection or contention that the foundation for the evidence had not been established. Thus, even if Rule 3A:9(b)(5) applies to rulings on the admissibility of evidence, it does not relieve the opponent of the evidence of the requirement of making a contemporaneous objection. Accordingly, we do not consider the challenge to the relevance of the evidence because Rule 5A:18 precludes consideration of challenges to admissibility of evidence to which there has been no timely objection.

## II.

Harward challenges the admissibility of opinion evidence from bite-mark identification expert witnesses on the ground that no foundation evidence established that the technique for comparison is sufficiently reliable to be a scientifically recognized procedure. He notes that no reported Virginia case has addressed the question. He urges that we consider cases from other jurisdictions as well as texts which have questioned whether the procedure for bite mark identification is in the developmental and experimental stage rather than a consistently reliable technique recognized and accepted in the scientific community. The Commonwealth argues that all jurisdictions which have addressed the issue have held such evidence admissible after finding the technique "scientifically sound and reliable."

While we have considered the authority on the subject, we conclude that it is unnecessary to address the issue in this appeal. Following Harward's first conviction the identical issue was presented to the Supreme Court in a petition for a writ of error.

*See Harward v. Commonwealth*, (Record No. 840550, Petition for Appeal, Assignment of Error No. 6). The court refused to issue a writ of error on that assignment of error. On remand the trial court refused to reconsider the challenge, ruling that the Supreme Court's refusal of the writ affirmed the trial court's ruling on the admissibility of the evidence. In essence the trial court held that it was not necessary for the Commonwealth to reestablish for purposes of admissibility that the general procedure produced scientifically reliable results. The Commonwealth was merely required to prove that the procedure utilized was proper and in accordance with accepted techniques and procedures. We agree.

■■■ The Supreme Court held "unequivocally that a decision to grant or refuse a petition for writ of error is based upon equally-applied criteria—the merits of the case." *Saunders v. Reynolds*, 214 Va. 697, 700, 204 S.E.2d 421, 424 (1974). When there is "substantial possibility that error has been committed in the conviction of the defendant," then a writ is granted. *Id.* at 703, 204 S.E.2d at 425. "[A] convicted felon whose claims lack substance is refused a writ." *Id.* at 702, 204 S.E.2d at 424. The Court has held the doctrine to apply even when "the precise issue involved" resulted in denial of a petition for a writ of error in a separate case. *Stillwell v. Commonwealth*, 219 Va. 214, 226, 247 S.E.2d 360, 368 (1978). *A fortiori* the principle applies where the appellate court refuses to consider the identical issue and the case is remanded for retrial. Accordingly, we conclude that the trial court correctly ruled that the Supreme Court's denial of the petition for a writ of error on an assignment of error identical to the question presented to us was tantamount to a ruling that the science of bite mark identification was sufficiently reliable to allow admission of the same opinion evidence in the case on remand. Thus, we affirm the trial court's ruling.

### III.

Harward asserts that the trial court erred in refusing to grant a mistrial when a Commonwealth witness during cross-examination mentioned the previous trial. The following exchange occurred during the testimony of Dr. Levine:

Q. And has — have you reviewed the evidence since 1982, or '83, when you testified —

A. Which evidence?

Q. When did you receive the — these pieces of evidence, was it in 1983?

A. I can tell you precisely. March 25, '83.

Q. And that's when you arrived at your conclusion, was in '83?

A. That's correct.

Q. Have you studied them in preparation for this trial again?

A. Yes sir. I went, I asked Mr. Robinson for a copy of my trial testimony, last trial, which he sent to me, and I read back through that, and I also went back through all the photographs.

Harward contends that the comment violated the trial court's ruling *in limine* which prohibited any mention of the first trial and contravened the holding in *Barker v. Commonwealth*, 230 Va. 370, 337 S.E.2d 729 (1985), that a juror's knowledge of a defendant's prior conviction of the same offense constituted grounds for reversal. Harward reasoned that the comment contaminated the entire jury panel by informing them of his previous conviction. In denying Harward's mistrial motion the trial court observed that the comment had caused him "some concern" and prompted him *sua sponte* to caution the witness and counsel about dealing with the subject. However, he overruled the mistrial motion, stating: "I don't think it made any impression on the jury, one way or the other . . . . I'm sure—it did no harm."

*Barker v. Commonwealth* recognized the devastating effect that a prospective juror's knowledge of the defendant's previous conviction for the same offense would have on the presumption of innocence and his right to obtain a fair trial from an unbiased jury. The reference to "the last trial" did not infringe upon that right. While arguably the comment may have contravened the order *in limine*, the order was broader than necessary to afford the protection for which it was designed. The comment by Dr. Levine did not impart information that "the last trial" resulted in a convic-

tion for any offense for which Harward might have stood indicted. Nor did the nature of the comment warrant any inference that Harward had been previously convicted. The reference could have been to any number of judicial proceedings.

Moreover, the trial judge was in the best position to observe the significance and impact which the comment had upon the jurors. He could assess the context in which the comment was made, reactions of trial participants, juror's responses, and the inferences which could be drawn. He found the comment did not make "any impression whatever on the jury."

■ On appeal the denial of a motion for a mistrial will not be overruled unless there exists a manifest probability that the denial of a mistrial was prejudicial. *LeVasseur v. Commonwealth*, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983), *cert. denied*, 464 U.S. 1063 (1984). Assuming without deciding that the witness's comment exceeded the limitation of the pre-trial order, the trial court did not err in refusing to grant a mistrial.

## IV.

Harward contends that the wholly circumstantial case is insufficient to establish beyond a reasonable doubt that he was the intruder who murdered Jesse Perron. At most, he argues that the evidence creates a suspicion that he may have committed the offense. He emphasizes that the bulk of the circumstantial evidence which is nonincriminating far outweighs the questionable identification by the security guard and the bite mark identification evidence. Harward argues that the evidence tends to prove that someone other than he committed the murder.

■ The burden is upon the Commonwealth to prove beyond a reasonable doubt that the accused was the perpetrator of the crime. *Higginbotham*, 216 Va. at 353, 218 S.E.2d at 537. The circumstantial evidence of criminal agency must "point unerringly" to the defendant, which means no more and no less than it must exclude every reasonable hypothesis of innocence. *Cook v. Commonwealth*, 226 Va. 427, 433, 309 S.E.2d 325, 329 (1983.)

"[I]f the proof relied upon by the Commonwealth is wholly circumstantial, as it here is, then to establish guilt beyond a reasonable doubt all necessary circumstances proved must be

consistent with guilt and inconsistent with innocence. They must overcome the presumption of innocence and exclude all reasonable conclusions inconsistent with that of guilt. To accomplish that, the chain of necessary circumstances must be unbroken and the evidence as a whole must satisfy the guarded judgment that both the corpus delicti and the criminal agency of the accused have been proved to the exclusion of any other rational hypothesis and to a moral certainty. Yet what inferences are to be drawn from proved facts is within the province of the jury and not the court so long as the inferences are reasonable and justified."

*Higginbotham*, 216 Va. at 352-53, 218 S.E.2d at 537 (quoting *LaPrade v. Commonwealth*, 191 Va. 410, 418, 61 S.E.2d 313, 316 (1950)). While we must consider the sufficiency of the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom, *Sutphin v. Commonwealth*, 1 Va. App. 241, 243, 337 S.E.2d 897, 898 (1985), we cannot on review disregard credible, unimpeached evidence of the Commonwealth which exculpates the defendant and creates a reasonable doubt. *See Bridgeman v. Commonwealth*, 3 Va. App. 523, 530, 351 S.E.2d 598, 603 (1986).

Harward suggests that the forensic evidence tends to prove that someone other than he committed the murder and, thus, creates a reasonable hypothesis of innocence. The foreign pubic hair taken from Teresa Perron did not match his hair; the police were unable to match it with any possible suspect or person with whom she had frequent contact. Saliva swabs taken of the bite marks to test for secretory substances were not matched to Harward. Swabs taken of seminal fluid from the victim or collected at the scene suggested that the assailant was either a nonsecretor or that an insufficient amount of fluid was available for testing while evidence established that Harward was a type A secretor. Two of the three cigarette butts tested positive for type O and B body secretions while the third either had insufficient saliva for testing or any fluids were from a nonsecretor. Teresa Perron has type B blood and Jesse Perron was type O. None of thirty-one hairs found in Jesse Perron's hand were matched to Harward; however they were all consistent with Jesse Perron's own hair indicating he took hold of them during the beating. None of the other hairs found throughout the house matched Harward's. Finally, Har-

ward suggests that Teresa Perron's description of the murderer as a clean shaven nineteen or twenty year old, who was wearing a naval insignia of three inverted v's, was inconsistent with proven facts. He points to evidence that he wore a moustache at the time, was an E-3 with rank markings of three long slashes and was twenty-six years old.

We are unpersuaded by Harward's argument. Much of the forensic evidence which he asserts is exculpatory is merely inconclusive or neutral, as is the case in many investigations. Forensic analysis frequently fails to disclose probative evidence. While the absence of evidence may be a proper consideration for the factfinder to determine whether the circumstantial evidence proves guilt to the exclusion of a reasonable doubt, such absence is not exculpatory. Discrepancies in the description of the intruder as to the facial hair, naval insignia, and age go to the weight of the evidence and the jury could consider those discrepancies in evaluating the evidence. Such discrepancies do not discredit the evidence as a matter of law unless the testimony is so conflicting as to be inherently incredible. *See Evans v. Briley*, 221 Va. 1042, 1046, 277 S.E.2d 184, 186-87 (1981). The differences Harward points to are not of that magnitude. The evidence pertaining to bodily secretions was equally susceptible to an interpretation that no fluids were detectable as it is that fluids from a nonsecretor were present. Such inconclusive evidence is not exculpatory. The factfinder cannot hypothesize a doubt from the absence of evidence so long as all the circumstantial evidence excludes every reasonable hypothesis of innocence.

We review the circumstantial evidence which supports the conviction. Donald Wade was positive in his identification of Harward as the sailor who came through his station the morning of the murder in a dazed condition with what appeared to be blood speckles on his uniform. After the murder, the intruder asked Mrs. Perron for directions from her home to Norfolk and requested bleach from her, presumably because of the blood splattered uniform. Harward lived in Norfolk and worked in the dry cleaning station on ship. Both forensic dentists testified that all gross characteristics of spacing, width, and alignment of Harward's teeth "fit on the money" the photographs of bite marks on Teresa Perron's legs. Most important a number of individual distinctive characteristics led Dr. Levine to conclude to a "reasonable

medical certainty" that Harward made the bite marks. If believed, that evidence proves that Harward murdered Jesse Perron. There exists no evidence in the record tending to prove that someone other than Harward murdered Jesse Perron. Finding the circumstantial evidence sufficient, we affirm the conviction.

*Affirmed.*

Baker, J., and Hodges, J., concurred.