COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Huff and AtLee
Argued by videoconference

**PUBLISHED**

CLIFTON HALEY HARPER, JR.

OPINION BY
v.      Record No. 0453-22-4          JUDGE ROBERT J. HUMPHREYS
                                      APRIL 11, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Michael E. Levy, Judge

Gowri Janakiramanan, Assistant Public Defender, for appellant.

Lindsay M. Brooker, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Following a bench trial in the Stafford County Circuit Court, Clifton Haley Harper, Jr.

appeals his convictions on the charges of inducing false testimony, Code § 18.2-436, and felony

failure to appear, Code § 19.2-128(B).  He argues that the Commonwealth's evidence at trial was

insufficient to prove that K.M.[1] testified falsely at Harper's bond hearing, that he induced K.M.'s

testimony, and that he willfully failed to appear for his trial on June 6, 2018.

BACKGROUND

"[U]pon appellate review, the evidence and all reasonable inferences flowing therefrom

must be viewed in the light most favorable to the prevailing party in the trial court."

*Commonwealth v. Hudson*, 265 Va. 505, 514 (2003).  "Viewing the record through this

evidentiary prism requires us to 'discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and

---

[1] We refer to this witness by her initials to protect her privacy.

all fair inferences to be drawn therefrom.'" *Smith v. Commonwealth*, 56 Va. App. 711, 714 (2010) (quoting *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009)).

## I. Physical Assault

On December 29, 2017, Stafford County Sheriff's Deputy N.C. Potter responded to a call at America's Best Value Inn in Stafford County. As he approached the hotel in his cruiser, he observed a woman running towards the hotel's front office, wearing nothing but a towel on a very cold evening. She appeared frantic and scared. Deputy Potter spoke with the woman, whom he identified as K.M., and took her written statement. She wrote,

> Tossed me against the wall, dragged me by my hair. My eye is semi-swollen and black either, and in parenthesis I said either smacked or punched me, forced me to take my clothes off and shower, wouldn't let me leave the room when I wanted to leave, grabbed me by neck and threw me on the bed, breathing was hard.

Deputy Potter also took photographs of K.M., which show swelling to her face and swelling and bruising on her arm.

Deputy Potter also spoke with Harper, who appeared agitated and aggressive. Harper told Deputy Potter that he and K.M. had a verbal argument over some damage to her vehicle. He said he did not hit K.M. but he repeatedly stated that he did not let her leave the room when she wanted to, and he held her by the shoulder and would not let her leave "because he didn't want to make this something bigger than it was." He added that he took her clothes off and made her shower with him. Deputy Potter obtained a warrant for Harper's arrest and an emergency protective order ("EPO") which he served on Harper. The EPO stated that Harper shall have "no contact of any kind with [K.M.]."

## II. Jail Calls

In spite of the EPO, Harper made phone calls to K.M. from the jail in the early morning hours on December 30, 2017. Relevant statements from the calls include:

<u>First jail call</u>:

Harper: I thought you was going to cooperate with me so I won't get locked up.

Harper: You know I wouldn't be locked up right now if you didn't run out the door with your freakin' towel on, right?

K.M.: I wasn't the one that called the cops.

Harper: I know. You didn't have to tell them everything that happened either, though.

K.M.: I don't want to see you in jail. Like, I'm not that type of female.

Harper: You put me in here. You put me in here.

K.M.: You gave me a bruise on my eye. That wasn't necessary.

Harper: You know when I get this court date and everything, if anything, the only way that [will] get me out of it is if you either don't show up or come to court and say he hasn't been doin' it.

Harper: You know I'm going to get big time for this shit, right?

K.M.: I'm not going to show up to court.

Harper: This is going to be even worse [than the last time] . . . they're trying to get me for . . . a whole rack of shit, keeping you hostage and strangling you, and all this extra shit.

Harper: You know how much time they going to give me for that shit?

Harper: You told the officer everything what happened; you suppose to tell them it's alright . . . so I could come back in the room with you. . . . Now I'm stuck in here all of New Years.

Harper: You did just get me locked up. If you would have told the feds that everything was fine. . . . They

would have just let me go. . . . But you had to tell them the whole story.

K.M.: What happens if I don't go to court? . . . Do they just drop it?

Harper: I don't know . . . I'm pretty sure they should.

Harper: You're my girl and shit . . . but we don't get each other locked up.

Second jail call:

Harper: I ain't gonna lie, I'm in here crying cause of you, like I love you, I know yes, we do go through a lot of shit, but I'm just like, you know what I mean, I thought you would have my back through that shit too because I wouldn't be in here right now if you had just get off the brakes, just like there ain't nothing wrong with me, we ain't having nothing, just as simple as arguing like everybody else is, you know what I mean, and I wouldn't have to go through this shit.

Harper: You know they trying to charge me with three different charges against you, right?

K.M.: You know I'm not going to go to court. You know . . . I don't want to do anything to make you end up going to jail for this.

Harper: Even though all that shit happened . . . I'm sorry for everything and you know I love you.

K.M.: I love you.

K.M.: You gotta see what you do too.

Harper: You can't talk over me either.

Harper: I don't even do much. I just throw you.

K.M.: I don't want it to get worse. I don't want the arguments to get worse. I don't want the bruises to get worse.

K.M.: I felt like it was wrong for you to put your hands on me the way you did today.

- 4 -

| Harper: | You did disrespect me. You started yapping over me. |
|---|---|
| K.M.: | You just keep putting your hands on me. |
| Harper: | Well, you did just get me locked up, so I still got a lot of thinking about that too. |
| K.M.: | I still love you . . . but it's not healthy. |
| Harper: | Well, if anything, the best thing you probably can do is probably not show up to court or show up to court and tell them nothing happened. |
| K.M.: | I was just planning on not going. . . . But I was going to look into it more and just find out what would be the best. |

Also in this call, K.M. recalled that Harper pushed her against the wall, and Harper replied, "because you had an attitude." She told him nothing she did justified him pushing her against the wall.

### III.  Pre-trial Proceedings

On January 23, 2018, K.M. appeared in the circuit court to testify on Harper's behalf at his bond hearing. K.M. swore an oath before the court to testify to "the truth, the whole truth, and nothing but the truth . . . ." When asked by Harper's counsel if Harper strangled her on December 29, 2017, K.M. answered, "No. I wanted to go against that statement." Prompted to explain, she stated,

> I wanted to go against it and I understand that after the incident they were insisting on me to take forensic pictures and all that, I didn't find it necessary. It was pretty much him just stopping me from stepping out of our hotel room because I was in a very irate state, and I was planning on driving going to some parking lot or something and he did not want a scene to be caused, I didn't either, honestly. But we were both not meeting ends and we just kept going back and forth, and that's pretty much how it all happened.

She also stated,

> I don't think he should be getting punished when it didn't go down as him just attacking me, he didn't. We were just arguing, and it got to the point where he was holding me down so I wouldn't go out and start yelling and make a scene outside, but it wasn't anything I can say I was injured or physically affected in a permanent way, or anything like that.

On cross-examination, the Commonwealth's attorney asked K.M. whether she was honest with the police on December 29, 2017. K.M. replied, "Honestly, I feel like I wasn't. I feel like my statements were completely incorrect." To clarify, the Commonwealth's attorney asked, "[A]re you saying that you lied to the police?" K.M. answered, "Yes. Pretty much my statements were incorrect. I should have been more specific. I should have written it down in I guess a more essay format. I was nervous, my adrenaline was pumping, I wasn't thinking straight, and my statements were completely absurd and incorrect." She added, "That's why I'm mainly here today to go against them." Finally, the Commonwealth's attorney showed K.M. the written statement that she gave to Deputy Potter on December 29. K.M. confirmed, that was the statement she was saying was false.

On March 5, 2018, the grand jury indicted Harper on charges of abduction, misdemeanor domestic assault and battery, and inducing false testimony. On March 20, 2018, as reflected in the circuit court's order, Harper appeared in circuit court for arraignment. He signed an "Acknowledgment of Advise of Rights" [sic] and pleaded not guilty to the indictments in open court. The circuit court order reads,

> [A]fter being advised by the Court and his attorney of his right to a trial by a jury, the accused knowingly and voluntarily waived trial by a jury with which waiver the Attorney for the Commonwealth did not concur.
>
> Whereupon, this case is set for a trial, with a jury, as requested by the Commonwealth on June 6, 2018, at 10:00 a.m.

Also on March 20, Harper signed his recognizance form, which stated, "I, the Defendant, as a condition of my release from custody, by signing this form, promise to appear in court on the date and time noted above." The date and time noted on the form are "June 6, 2018 at 9:00 a.m."

On June 6, 2018, the circuit court's order reflects that Harper did not appear for the jury trial "as previously ordered on March 20, 2018 . . . ." The court ordered a capias for Harper's arrest. On July 2, 2018, the grand jury issued a direct indictment against Harper for felony failure to appear. Harper did not return to court on the capias until April 9, 2021.

## IV. Trial

At the bench trial, the circuit court heard the testimony of Deputy Potter regarding the events he witnessed on December 29, 2017, recited *supra*. K.M. also testified for the Commonwealth. K.M. testified that on December 29, she and Harper were in a romantic relationship and they were living together in a room at America's Best hotel. She woke up suddenly remembering that she had forgotten about some car repairs that she needed to take care of that day. She did not know why this upset Harper, "but it eventually led to him pushing [K.M.] off of the bed and [K.M.] hitting the wall." Although her memory was imprecise due to the passage of time, she recalled that Harper "smacked or punched" her and that she ended up with a black eye. She testified that Harper ripped her clothes and she "eventually ended up taking a shower." After that she was upset and was trying to leave.

She continued, describing that she ran in a towel, in the middle of the night, to the front desk of the hotel where the manager called the police. She recalled being scared and needing help, and she did not know what to do. She also remembered writing a statement at the time these events occurred. The Commonwealth presented K.M.'s written statement to her and she affirmed that the statement was "true and accurate, to the best of [her] ability, when [she] gave it to law enforcement." She added that there are certain bullet points of the statement that she does

not remember because she "just can't recall that far back." But, she continued, "I do recall that I wrote the statement down in full honesty." K.M. read the statement into evidence, recited *supra*.

The circuit court then admitted into evidence the jail calls from Harper to K.M. recorded on December 30, 2017, at 1:27 a.m. and 1:43 a.m. The Commonwealth played portions of the calls for the court, recited in part *supra*. Next, the Commonwealth introduced the transcript from Harper's bond hearing, including K.M.'s testimony at that hearing. At trial, K.M. testified that she did not remember what she testified to at the bond hearing, but she was "pretty sure it was all to be on Clifton's side." The Commonwealth asked K.M., "Would it be fair to say that it was different than what you had just testified about what happened on the evening of December 29th, 2017?" K.M. replied, "Yes, it was." When asked, "Today, when you testified about what he did to you on December 29th, 2017, was that the truth?" K.M. answered, "Everything I'm saying today is the truth." Finally, asked, "On January 23rd, 2018, did the conversations with [Harper] play into any aspect of why you came to Court and testified on his behalf?" K.M. responded, "Yes, it contributed."

On cross-examination, K.M. testified that she did not recall specific statements that she made at Harper's bond hearing in 2018, but that she knew "it was definitely to get him out of jail." When asked by defense counsel, "is it your testimony here today that you lied to the Stafford County Circuit Court on January 23rd, 2018?" K.M. replied, "Yeah." The questioning continued, "And did you lie because Mr. Harper asked you to?" K.M. answered, "Yeah." Defense counsel added, "Even though you told him back in December of 2017 that you were going to have done it anyway?" K.M. said, "Yeah. I lied because he told me to, and I was on his side, and I just had this mentality that he was a good person and that I wanted to be with him . . . ."

At the conclusion of witness testimony, the Commonwealth requested that the circuit court take judicial notice that on June 6, 2018, in the Stafford County Circuit Court, several charges against Harper were set for a jury trial and he did not appear on that date. The circuit court responded, "I do see Judge Willis's order of June 6, 2018 reflecting that Mr. Harper was not present and that the capias was issued for the failure to appear, and a bondsman show cause issued as well." The Commonwealth rested at that point.

Harper's counsel moved to strike the evidence on the charge of inducing false testimony. Counsel argued that the Commonwealth failed to prove inducement because during the jail call Harper told K.M. "the best thing you can probably do is probably not show up to Court," or "show up and tell them that nothing happened." But, counsel argued, K.M. did show up in court, and she never testified that "nothing had happened." Harper's counsel recited much of K.M.'s bond hearing testimony, then emphasized that "at no point does [K.M.] ever say nothing happened." The court denied the motion to strike.

The defense offered no evidence and renewed its motion to strike. Relevant to this appeal, Harper's counsel argued that the circuit court should strike the evidence on the felony failure to appear charge because the Commonwealth failed to prove that Harper's failure to appear was "willful." Harper's counsel also renewed its motion to strike the evidence on the inducing false testimony charge, arguing that K.M. did not lie to the court at the bond hearing, she did not disavow her statements made to law enforcement on the night of the offense, and she never said "nothing happened" or "he didn't touch me." Defense counsel also argued that Harper's statements to K.M. on the jail calls did not amount to inducement—"He doesn't threaten her, he doesn't coerce her, beyond telling her that he loves her, he doesn't offer her any consideration in exchange for her testimony." The circuit court denied the motions to strike and

found Harper guilty of inducing false testimony and felony failure to appear, among other charges.

ANALYSIS

Harper argues that the evidence was insufficient to prove (1) that K.M. falsely testified at Harper's bond hearing, (2) that K.M.'s testimony at the bond hearing was given upon Harper's inducement, and (3) that Harper willfully failed to appear in court for his trial.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

I. False Testimony

Code § 18.2-436 provides,

> If any person procure or induce another to commit perjury or to give false testimony under oath in violation of any provision of this article, he shall be punished as prescribed in § 18.2-434.
>
> In any prosecution under this section, it shall be sufficient to prove that the person alleged to have given false testimony shall have been procured, induced, counselled or advised to give such testimony by the party charged.

Code § 18.2-434 provides, "If any person to whom an oath is lawfully administered on any occasion willfully swears falsely on such occasion touching any material matter or thing, . . . he is guilty of perjury, punishable as a Class 5 felony." On an indictment for subornation of perjury, it is not necessary for the Commonwealth to prove that the person giving false testimony under oath has been *convicted* of perjury, but the Commonwealth must prove that the person committed perjury. *Mundy v. Commonwealth*, 161 Va. 1049, 1062 (1933). The perjury elements the Commonwealth must prove, as provided in Code § 18.2-434, are: "(1) that an oath was lawfully administered; (2) that the [person] willfully swore falsely; and (3) that the facts to which he falsely swore were material to a proper matter of inquiry." *Pijor v. Commonwealth*, 294 Va. 502, 513 (2017) (quoting *Mendez v. Commonwealth*, 220 Va. 97, 102 (1979)).

Harper does not contest the first and third elements of perjury[2]; his argument is that K.M. made no false statement, therefore his conviction cannot stand. He asserts that K.M. claimed to have made false statements on two different occasions: at the bond hearing she claimed to have lied to the law enforcement officer on December 29, 2017, and at trial she claims to have lied at the bond hearing. However, he argues "it is evident from the actual words that she spoke [at the bond hearing] that she never had been untruthful about the actual facts of the case." We are unpersuaded by Harper's efforts to dissect K.M.'s testimony while ignoring admitted and corroborated false statements.

---

[2] K.M.'s bond hearing testimony was material to whether Harper should have been admitted to bail because her testimony related to the issue before the court of whether Harper's liberty would constitute an unreasonable danger to family or household members or the public. Code § 19.2-120(A)(2); *see Sheard v. Commonwealth*, 12 Va. App. 227, 232 (1991) (finding defendant's bond hearing testimony material to issues before the court, including future appearance and threat to society, and that testimony, being false, supported her perjury conviction). Furthermore, K.M.'s bond hearing testimony was also material to the "weight of the evidence" against Harper, a mandatory consideration of a judicial officer in determining the issue of bail. Code § 19.2-120(B); *see Jeffrey v. Commonwealth*, ___ Va. App. ___, ___ (Mar. 14, 2023) (en banc) ("Virginia Criminal Procedure requires a judicial officer to consider the 'weight of the evidence' as a relevant factor to determining pre-trial release on bail.").

"Falsity is the main ingredient of the crime of perjury . . . ." *Fitch v. Commonwealth*, 92 Va. 824, 834 (1896). The Code of Virginia "has never expressly required corroboration to sustain a perjury conviction, [yet] from an early date, our courts have imposed a corroboration requirement." *Keffer v. Commonwealth*, 12 Va. App. 545, 547 (1991) (first citing *Schwartz v. Commonwealth*, 68 Va. 1025, 1027 (1876); and then citing Ronald N. Boyce & Rollin M. Perkins, *Criminal Law* 523-24 (3d ed. 1982) (rule is universal requiring two independent witnesses or one witness with corroborating circumstances for perjury conviction)). "[T]he 'nature of the corroboration' necessary to substantiate the testimony of a single witness in a perjury prosecution has never been specifically delineated." *Stewart v. Commonwealth*, 22 Va. App. 117, 120 (1996). The corroborating evidence "must be of a strong character, and not merely corroborative in slight particulars." *Id.* (quoting *Schwartz*, 68 Va. at 1027). "[I]t need not be equal in weight to the testimony of a second witness. Rather, the corroborating evidence must confirm the single witness' testimony in a manner strong enough 'to turn the scale and overcome the oath of the [perjurer] and the legal presumption of his innocence.'" *Id.* (quoting *Keffer*, 12 Va. App. at 548).

In this case, K.M. is the single witness who testified to the falsity of her own prior testimony under oath. At Harper's trial on inducing false testimony, K.M. testified that her testimony at the bond hearing was false. K.M. testified at the bond hearing that her statements to the police on December 29, 2017, were "completely absurd and incorrect" and that she wanted to "go against them"; she affirmed that they were false. Also at the bond hearing, K.M. stated that she and Harper were mutually arguing, it was not just him attacking her, and he was just trying to keep her from stepping out of the room in a frantic state and making a scene.

At Harper's trial, K.M. testified that she wrote the statement for the police on December 29, 2017, "in full honesty" and affirmed that it was "true and accurate." She testified that she

was living with Harper in the hotel room when Harper became upset with her and pushed her off the bed and into the wall, hit her in the face and gave her a black eye. After that she was upset and "didn't want to be there," so she ran to the front desk dressed only in a towel on a December night. The front desk attendant called the police. K.M. testified that she was "scared" and "needed help." She read her statement to the police into evidence, where she stated that Harper "smacked or punched" her, forced her to take her clothes off and shower, would not let her leave the room when she wanted to, grabbed her by the neck, and breathing was hard.

Substantial evidence corroborates that K.M. testified falsely at the bond hearing. Deputy Potter testified at trial to the events he witnessed on the night of the offense, including that K.M. ran towards him in a towel on a cold night in a frantic and scared demeanor and that he took K.M.'s written statement at the scene regarding Harper's physical assault upon her. The Commonwealth introduced photographs Deputy Potter took showing K.M.'s. bruising and swelling after Harper's physical assault.

The jail calls further corroborate the falsity of K.M.'s bond hearing testimony. During the jail calls Harper admitted his physical aggression against K.M., saying "I just throw you," and K.M. recalled the fight in the hotel room including that he bruised her eye, pushed her against the wall, and keeps getting physical with her. She said in the second call that she felt like it was wrong for him to put his hands on her the way he did that day.

Considering this evidence, a rational fact finder could conclude that K.M.'s bond hearing testimony that their argument was only a mutual disagreement, that Harper was trying to help K.M. by preventing her from causing a scene, and that her statement to the police was "absurd and incorrect," was materially false testimony.

II. Inducement

Harper argues that the evidence was insufficient to prove that K.M.'s testimony at the bond hearing was given upon his inducement. He asserts that he imposed no external pressure or coercion on K.M. beyond merely suggesting a course of action—that she not show up to court or show up and tell them nothing happened. Because K.M. did not follow through "in the manner he recommended," he argues, the "causal connection" between his statements to her on the jail calls and her testimony at the bond hearing was lacking.

Code § 18.2-436 includes that "it shall be sufficient to prove that the person alleged to have given false testimony shall have been *procured, induced, counselled or advised* to give such testimony by the party charged." (Emphasis added). In this case, the grand jury indictment stated that Harper "did procure or induce another to commit perjury or to give false testimony under oath, in violation of §§ 18.2-436; 18.2-10 of the Code of Virginia (1950) as amended." At trial, the circuit court stated, "we will stick with what's in the indictment, procured or induced another person to give false testimony under oath."

"The definition of 'procure' includes 'to bring about by scheming and plotting,' and 'to prevail upon to do something indicated: INDUCE.'" *Dietz v. Commonwealth*, 294 Va. 123, 133 (2017) (quoting *Webster's Third New International Dictionary* 1809 (1993)). "The term 'induce' means '[t]o lead on; to influence; to prevail on; to move by persuasion or influence.'" *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760 (2011) (alteration in original) (quoting *Webster's New International Dictionary* 1269 (2d ed. 1945)).

During the jail calls Harper repeatedly blamed K.M. for the fact that he was in jail. He told her that she should not have told the officer everything that happened and that she should have said everything was "fine." Harper told her to not show up to court, or to show up and tell them nothing happened and "he hasn't been doin' it." Thereafter, K.M. did show up to court for

Harper's bond hearing to testify for him and she "went against" the statements she gave to the officer on the night of the physical assault. Under oath, she testified that her statements to the officer on the night of the physical assault were false and absurd. She said, "it didn't go down as him just attacking me, he didn't," and she said she wasn't "injured or physically affected in a permanent way."

Reasonable inferences flow from the jail calls that Harper was manipulative and abusive towards K.M. K.M. testified at Harper's trial that her bond hearing testimony regarding the events of December 29, 2017, was "all to be on [Harper's] side" and "to get him out of jail" and that she lied to the circuit court at the bond hearing because Harper told her to. After hearing the jail calls and K.M.'s testimony, a rational trier of fact could find that Harper's statements induced K.M. to testify falsely at his bond hearing.

### III. Failure to Appear

Finally, Harper argues that the circuit court "erred in finding the Commonwealth's evidence was sufficient to prove that [he] willfully failed to appear for his court date on June 6, 2018." His argument on appeal is that "the Commonwealth did not seek to introduce evidence of notice, and the trial court made no attempt to ascertain that notice was provided."

Code § 19.2-128(B) provides, "Any person (i) charged with a felony offense . . . who willfully fails to appear before any court as required shall be guilty of a Class 6 felony." In the circuit court, Harper did not raise the argument he now raises on appeal, that the Commonwealth failed to prove that he had *notice* of his trial date. Rather, below he only asserted generally that the Commonwealth did not prove his *willful* failure to appear.[3] In response to Harper's

---

[3] Specifically, defense counsel stated, "the mere fact of his nonappearance, Your Honor, I believe the case law tells us that absent any other evidence—the Commonwealth still needs to demonstrate that there was a willful failure to appear at that time, and they have made no effort to do that."

willfulness argument, the circuit court did not address notice, having no reason to do so given the stated assertion, but rather responded to the argument that was made:

> I'm not sure how you would ever show willfulness unless you have some sort of a person to testify of the fact that he said specifically he was not coming. The capias for the failure to appear was issued in 2018, and not served until March of 2021, and that does fill in some of the gap with respect to the issue of willfulness to the extent that's a gap that needs to be filled in.

Defense counsel made no further argument in response despite the court giving her an opportunity to do so.

Rule 5A:18 states, "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ." The grounds for the objection must be stated with specificity. *McDuffie v. Commonwealth*, 49 Va. App. 170, 177 (2006). "The prevailing purpose behind this rule is 'to enable the trial court to prevent error, to cure alleged error with prompt and decisive instruction . . . .'" *Id.* (quoting *Harward v. Commonwealth*, 5 Va. App. 468, 474 (1988)). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).

We have said that "[t]he language of Code § 19.2-128(B) is plain and unambiguous, and does not include timely notice as an element of felony failure to appear—only willful failure to appear." *Chavez*, 69 Va. App. at 157. "[F]ar from being an element of the offense of felony failure to appear, proof of timely notice simply provides a *prima facie* basis for finding that the element of willful failure to appear has been proven; that is, timely notice is but one mechanism for proving willfulness." *Id.* at 159 (footnote omitted). Here, the circuit court found Harper's years of avoiding apprehension as evidence that he willfully failed to appear. Had defense counsel raised the Commonwealth's failure to prove notice below, the circuit court could have

addressed the alleged error.  For these reasons, we will not address the alleged error of the circuit court in accordance with Rule 5A:18.

## CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment.

*Affirmed*.