Present:  Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and
Agee, JJ., and Compton, S.J.

ASPLUNDH TREE EXPERT COMPANY

                                          OPINION BY
v.  Record No. 040797          JUSTICE LAWRENCE L. KOONTZ, JR.
                                         April 22, 2005
PACIFIC EMPLOYERS INSURANCE COMPANY

         FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                   William D. Broadhurst, Judge

     In this appeal, we consider whether the chancellor erred in

determining that the trial court retained jurisdiction in a

pending declaratory judgment action brought by an insurer to

determine its obligations under its business motor vehicle

liability insurance policy after the insurer funded a settlement

of the underlying tort action brought against the policyholder

by an injured party.  We further consider whether the chancellor

erred in determining that the insurer was not liable on the

policy and in directing the policyholder to refund to the

insurer the amount tendered to fund the settlement.

                            BACKGROUND

     While the record in this case is voluminous, we need recite

only those facts necessary to our resolution of the issues

presented in this appeal.[1]  See, e.g., WJLA-TV v. Levin, 264 Va.

140, 146, 564 Va. 383, 386 (2002).  Under familiar principles,

_____

     [1] The joint appendix prepared by the parties in this appeal
contains an unwarranted amount of material not germane to the
issues raised in the appeal in violation of Rule 5:32(g).

we will recite those facts in the light most favorable to the appellee, which prevailed on those issues in the trial court. Id.

Asplundh Tree Expert Company (Asplundh), a Pennsylvania corporation, employed Shawn E. Wimmer and Christopher Weeks through its regional operations office in Roanoke as part of a brush clearing crew led by Asplundh's foreman, Robbie W. Pertee. Pertee and the other members of the crew lived in West Virginia. The brush clearing work was performed in Virginia under Asplundh's contract with the Virginia Department of Transportation. Asplundh permitted Weeks to drive a company truck in order to transport the members of the crew to the day's worksite in Virginia and to return them to West Virginia at the end of the work day. Each night, Weeks would park the truck at a designated meeting place, and members of the crew who wished to ride to the next day's worksite in the company truck understood that they were to meet Weeks there in the morning. However, members of the crew were not required to ride to the worksite in the company truck, and Weeks was not permitted to use the truck for personal business.

On the morning of August 21, 2001, Wimmer, Pertee, and Jimmy W. Thompson, another member of the crew, met Weeks at the designated place in order to ride with him to the worksite. David J. Rose, who previously had been employed by Asplundh on a

2

different crew and was seeking a position on Pertee's crew, also rode with Weeks. As was customary, Weeks intended to stop somewhere along the way so that he and the other passengers could have breakfast. Pertee intended to contact his supervisor at that time to set up a meeting for Rose to be reinstated as an Asplundh employee. While traveling on Interstate 81 in Botetourt County, Weeks lost control of Asplundh's vehicle and it ran off the highway. All the passengers suffered injuries. Wimmer and Rose were severely injured.

At the time of this accident, Asplundh insured its company vehicles though a business motor vehicle liability insurance policy issued by Pacific Employers Insurance Company (Pacific Employers). In pertinent part, the policy expressly excluded from coverage any bodily injury to an Asplundh employee "arising out of and in the course of: . . . [e]mployment by [Asplundh]; or [p]erforming the duties related to the conduct of [Asplundh's] business." A further provision of the policy excluded from coverage any bodily injury for which Asplundh may be held liable "under any workers compensation . . . or any similar law."

In a letter dated October 9, 2001, Asplundh notified Marsh Risk Services, an agent for Pacific Employers, of the August 21, 2001 accident. Asplundh advised Pacific Employers in this letter that following the accident Asplundh had treated all

potential claims arising from the accident as being subject to workers' compensation.

On October 19, 2001, Wimmer filed suit against Weeks and Asplundh in the Circuit Court of McDowell County, West Virginia, seeking unspecified damages for the injuries he suffered in the August 21, 2001 accident.[2] On November 13, 2001, Asplundh initiated a proceeding in the Virginia Workers' Compensation Commission (Commission) seeking a determination that Wimmer's claims were subject to the provisions of the Virginia Workers' Compensation Act. Wimmer opposed the proceeding, asserting that the Commission could not exercise jurisdiction over his claims while the West Virginia civil case was pending. When the Commission rejected Wimmer's assertion, Asplundh subsequently moved for summary judgment in the West Virginia civil case, contending that Wimmer's claims therein were barred by the exclusivity provision of workers' compensation law and moved to dismiss the case on that ground.[3]

---

[2] Rose also filed suit against Weeks and Asplundh in the West Virginia court and the two cases were ultimately consolidated. Although the declaratory judgment action from which this appeal arises sought a determination as to Pacific Employers' liability for the claims of both Wimmer and Rose, for purposes of this appeal we are concerned only with the chancellor's determination as to Wimmer's claims.

[3] Asplundh based its motion on the application of Virginia law as the locus of the injury, but contended that West Virginia law would also bar the claim. The workers' compensation laws of both states contain exclusivity provisions exempting employers

During the proceedings in the West Virginia civil case and before the Commission, Asplundh was represented by its own counsel. Although it maintained intermittent communications with Pacific Employers concerning the civil case, Asplundh did not demand that Pacific Employers provide Asplundh with a defense. On October 24, 2002, Pacific Employers, pursuant to Code § 8.01-184, filed a bill of complaint in the Circuit Court of the City of Roanoke seeking a declaratory judgment that it was not liable on its policy of insurance with Asplundh for Wimmer's claims in the West Virginia civil case.[4]

Asplundh filed a grounds of defense and a separate motion to dismiss on November 19, 2002. Asplundh contended that the issue was whether Weeks' injuries arose out of his employment thereby causing workers' compensation to be the exclusive remedy. Accordingly, Asplundh maintained that declaratory judgment was not appropriate because Pacific Employers sought a "determination of disputed issues that must be determined in some future litigations between the parties." Asplundh relied

---

from civil liability for injuries covered by workers' compensation. See Code § 65.2-307(A) and West Virginia Code § 23-2-6.

[4] Pacific Employers was subsequently granted leave to file an amended bill of complaint to correct a reference to the applicable section of the insurance policy in the original bill of complaint.

upon USAA Cas. Insurance Co. v. Randolph, 255 Va. 342, 497 S.E.2d 744 (1998), for these assertions.

In the meantime, on November 22, 2002, Asplundh's counsel in the West Virginia civil case notified Asplundh that the motion previously filed in that case for summary judgment based on a workers' compensation bar had been denied.[5]  Apparently as a result of this denial, Asplundh's counsel entered into settlement negotiations with Wimmer.  During this process there was a continual exchange of communications between representatives for Asplundh and Pacific Employers.  The parties characterize the nature of these communications differently with respect to whether Pacific Employers was a willing participant in the settlement efforts, or was doing so solely in an effort to limit its potential liability and to avoid an allegation of bad faith by Asplundh.  Regardless, Pacific Employers repeatedly asserted that its participation was subject to a reservation to stand on its rights as determined in the pending declaratory judgment proceeding.

---

[5] We are unable to determine the precise date of the West Virginia trial court's denial of this motion from the record. Although Asplundh contended in the Virginia trial court that the ruling had occurred prior to the filing of the declaratory judgment action, it now concedes that the ruling, and the settlement it engendered, occurred after Pacific Employers initiated the declaratory judgment action that is the subject of this appeal.

6

On December 23, 2002, Pacific Employers agreed to fund a potential settlement of Wimmer's claims in the West Virginia case. Pacific Employers continued to maintain, however, that it was not abandoning any right it had to contest its liability under the insurance policy in question. Asplundh ultimately settled Wimmer's claim for $325,000 sometime in late 2002 or early 2003 with the funds provided by Pacific Employers.

The focus of the parties' dispute then returned to the declaratory judgment action in Virginia. On February 5, 2003, Asplundh filed a brief in support of its pending motion to dismiss. Asplundh abandoned its prior contention that under USAA the trial court lacked jurisdiction from the outset. Instead, Asplundh contended that under Liberty Mutual Ins. Co. v. Bishop, 211 Va. 414, 177 S.E.2d 519 (1970), the settlement of Wimmer's underlying tort claim eliminated the trial court's jurisdiction because there was no longer an actual controversy between Asplundh and Pacific Employers. Pacific Employers opposed the motion to dismiss contending that Liberty Mutual is distinguishable and that it had properly reserved its right to a determination of coverage under its policy in the pending declaratory judgment action.

The chancellor received oral argument from the parties and, on May 5, 2003, issued an opinion letter addressing Asplundh's motion to dismiss. The chancellor ruled that Pacific Employers'

provision of funds for the settlement of Wimmer's claims in the West Virginia litigation did not bar Pacific Employers from seeking relief through declaratory judgment. The chancellor reasoned that because Pacific Employers was not a party to the West Virginia litigation, it had no opportunity to assert its position that Wimmer was an employee acting within the scope of his employment at the time of the accident. Accordingly, the chancellor concluded that it was proper for the trial court to retain jurisdiction over the declaratory judgment action to decide that issue. On May 19, 2003, the chancellor entered an order denying Asplundh's motion to dismiss and adopting by reference the rationale of the May 5, 2003 opinion letter.

The declaratory judgment action then proceeded ponderously, with the parties conducting exhaustive discovery and filing motions with supporting briefs and counter-briefs. Ultimately, the chancellor received ore tenus evidence in a four-day hearing beginning on October 6, 2003. In addition, the chancellor received some 18 depositions totaling approximately 2500 pages. The evidence in this exhaustive record was mostly duplicative or related to issues not raised in this appeal. Summarizing it in detail here would add nothing to the summary of the pertinent facts already given above.

On November 25, 2003, the chancellor issued an opinion letter stating the rationale for his decision on the merits of

8

the declaratory judgment action.[6]  Relevant to the issues raised in this appeal, the chancellor found that "[b]oth for worker's compensation purposes and for the purposes of the policy language excluding coverage . . . Wimmer was in fact an employee acting within the scope of his employment at the time that his injuries were received."  For this reason, the chancellor further found that Pacific Employers' policy did not obligate it to pay damages for the injuries suffered by Wimmer in the August 21, 2001 accident.

On January 13, 2004, the chancellor entered a final order, adopting by reference the reasoning of the November 25, 2003 opinion letter, and ordering that Pacific Employers recover from Asplundh the $325,000 Pacific Employers had contributed toward the settlement of Wimmer's claims.  We awarded Asplundh this appeal.

DISCUSSION

Asplundh initially contends that the chancellor erred in denying its motion to dismiss the declaratory judgment action because the trial court did not have subject matter jurisdiction over the declaratory judgment action once Pacific Employers had

---

[6] On July 11, 2003, a final order was entered by the Commission dismissing the proceedings before it and expressly providing that it "makes no determination of Shawn Wimmer's status as an employee under the Act."  Wimmer v. Asplundh Tree Expert Company, VWC File No. 207-02-37 (July 11, 2003).

contributed funds, even under a reservation of rights, toward the settlement of the underlying tort claim filed by Wimmer.[7]  As it did in the trial court, Asplundh relies principally on Liberty Mutual for its assertion that a trial court lacks subject matter jurisdiction over a declaratory judgment action when an insurance company seeks a declaration of its obligations under an insurance policy after making a voluntary payment to resolve the underlying tort claim.  In such instances, Asplundh maintains, the real purpose of the suit is to obtain a money judgment, and declaratory judgment is not a proper procedure for

---

[7] We refused a separate petition for appeal in this case filed by Pacific Employers assigning error to certain aspects of the chancellor's final judgment that were unfavorable to Pacific Employers with respect to its liability for the claims asserted by Rose.  Pacific Employers Insurance Co. v. Asplundh Tree Expert Company, No. 040821 (October 22, 2004).  In briefing this appeal, Pacific Employers contends that by refusing its appeal from the same record, this Court has implicitly addressed the jurisdictional issue, as the trial court must have had proper jurisdiction to render judgment on those issues addressed in its appeal. We reject this contention.  While a decision to refuse a petition for appeal is a decision upon the merits of the issues raised therein, Saunders v. Reynolds, 214 Va. 697, 700-01, 204 S.E.2d 421, 424 (1974), it is also limited in its effect to the express language of the order denying the appeal.  Sheets v. Castle, 263 Va. 407, 411-12, 559 S.E.2d 616, 619 (2002). Moreover, the refusal of a petition for appeal carries no precedential value, except as to the issues addressed within "the four corners of the Court's order."  Id. at 412, 559 S.E.2d at 619.  The order refusing Pacific Employers' appeal stated that "there is no reversible error in the judgment complained of."  See Shiflett v. Eller, 228 Va. 115, 122-23 n.2, 319 S.E.2d 750, 755 n.2 (1984).

obtaining such relief.  Liberty Mutual, 211 Va. at 421, 177 S.E.2d at 524.

Pacific Employers responds that Liberty Mutual is inapposite because, unlike the circumstances of the present case, there the settlement of the underlying claim occurred prior to the filing of the declaratory judgment action.  Pacific Employers further notes that while a monetary judgment cannot be the sole aim of a declaratory judgment action, a court with subject matter jurisdiction over a proper declaratory judgment action may award any "relief essential to making effective the declaratory judgment entered by the court."  Winborne v. Doyle, 190 Va. 867, 873, 59 S.E.2d 90, 93 (1950).  Rather than being controlled by Liberty Mutual, Pacific Employers contends that the chancellor's decision in this case is supported by State Farm Fire & Cas. Co. v. Mabry, 255 Va. 286, 497 S.E.2d 844 (1998).  We agree with Pacific Employers.

In State Farm, the insurer agreed to defend its insured in a tort action arising from a shooting, while reserving the right to challenge its liability under policy language excluding coverage for injuries arising from intentional torts.  Id. at 288, 497 S.E.2d at 845.  While the tort suit was pending, the insurer filed a declaratory judgment action seeking to establish that it was not liable on the policy.  The insured subsequently entered into a consent judgment with the plaintiff in the tort

11

action settling the suit.  Id. at 288-89, 497 S.E.2d at 845.
The chancellor ruled that the insurer was collaterally estopped
from challenging the consent judgment and dismissed the
declaratory judgment action.  Id. at 289, 497 S.E.2d at 845.

This Court reversed the judgment of the chancellor,
agreeing with State Farm that collateral estoppel did not apply
because State Farm was not a party to the tort litigation and
there was not sufficient privity between State Farm and its
insured because the reservation of rights by State Farm
established that its interests were divergent from that of the
insured.  Id. at 289-90, 497 S.E.2d at 846.  In reaching this
conclusion, we relied upon our earlier decision in Reisen v.
Aetna Life and Cas. Co., 225 Va. 327, 302 S.E.2d 529 (1983).  In
Reisen, we held that a declaratory judgment proceeding to
determine coverage under an insurance policy could be brought by
an insurer while the underlying tort litigation was pending,
even if the ultimate issue of fact in determining coverage was
also at issue in the tort litigation.  This is so "because of
the likelihood that the insurer, after judgment in the tort
action, would be entitled to litigate the very same coverage
question it sought to raise before trial."  Id. at 336, 302
S.E.2d at 534.

Asplundh contends that neither State Farm nor Reisen
addressed the specific issue raised in this case, as State Farm

12

addressed only the issue of estoppel, not jurisdiction, while Reisen addressed only the issue of a court's concurrent jurisdiction over pending tort and declaratory judgment proceedings. Additionally, Asplundh emphasizes that in neither case was a money judgment for the insurer the object of the declaratory judgment action. We are unpersuaded by these contentions.

At the time the declaratory judgment action was filed by Pacific Employers in this case, the procedural posture of that action was indistinguishable from the procedural posture of the declaratory judgment action in Reisen. Similarly, as in the present case, when the declaratory judgment action was filed in State Farm there had not yet been any resolution of the related tort action. It is simply beyond question that in Reisen, in State Farm, and in the present case, the trial courts were vested with subject matter jurisdiction at the time the declaratory judgment actions were filed.

It should be self-evident that after a declaratory judgment action is filed the circumstances that caused the party seeking to have its rights and responsibilities determined by the court in equity may change. Indeed, such circumstances are implicitly contemplated by the provision in Code § 8.01-184 that grants the trial court jurisdiction "to make binding adjudications of right, whether or not consequential relief is, or at the time

13

could be, claimed." Code § 8.01-191 provides that this statute is remedial in purpose and expressly directs that it be "liberally interpreted."

The chancellor's determination here regarding the issue of the trial court's continuing jurisdiction over the declaratory judgment action after the settlement of the underlying tort case was instructed by this clear legislative mandate. As well, we have consistently held that "when a court of equity has once acquired jurisdiction of a cause upon equitable grounds, it may go on to a complete adjudication, even to the extent of establishing legal rights and granting legal remedies which would otherwise be beyond the scope of its authority." Erlich v. Hendrick Constr. Co., 217 Va. 108, 115, 225 S.E.2d 665, 670 (1976) (quoting Johnston v. Bunn, 108 Va. 490, 493, 62 S.E. 341, 342 (1908)); see also Advanced Marine Enters. v. PRC Inc., 256 Va. 106, 122, 501 S.E.2d 148, 157 (1998); Waskey v. Lewis, 224 Va. 206, 213, 294 S.E.2d 879, 882 (1982); Buchanan v. Buchanan, 174 Va. 255, 279, 6 S.E.2d 612, 622 (1940). In relying upon Liberty Mutual, Asplundh fails to recognize that there we were not concerned with the issue of continuing jurisdiction, but rather whether the trial court had jurisdiction at the outset. Our holding in Liberty Mutual does not address the jurisdictional issue raised in the present case.

14

For these reasons, we are of opinion that the chancellor properly determined that the trial court retained jurisdiction over the declaratory judgment action and had the authority to consider making a monetary award as part of the resolution of that case. Accordingly, we hold that the chancellor did not err in denying Asplundh's motion to dismiss.

Having determined the jurisdictional issue presented in this appeal, we turn now to consider Asplundh's contention that the chancellor erred in finding that Wimmer was within the scope of his employment at the time of the August 21, 2001 accident and, therefore, that Pacific Employers had no liability under its policy to satisfy Wimmer's claim for damages. The resolution of this issue is guided by well established principles invoked by the facts of this particular case.

There is no dispute that at the time of the accident Wimmer was Asplundh's employee. "Generally, an employee going to and from his or her place of employment is not engaged in any service growing out of and incidental to the employment" and, thus, an injury that occurs at such time does not arise out of and in the course of the employment. Barnes v. Stokes, 233 Va. 249, 251, 355 S.E.2d 330, 331 (1987). However, we have long recognized exceptions to this so-called "going and coming" rule.

In Kent v. Virginia-Carolina Chem. Co., 143 Va. 62, 129 S.E. 330 (1925), we noted that among the recognized exceptions

15

to this rule is "[w]here in going to and from work the means of transportation is provided by the employer." Id. at 66, 129 S.E. at 332. We applied this exception in Bristow v. Cross, 210 Va. 718, 173 S.E.2d 815 (1970), holding that the injury to an employee while going to work in an employer-owned vehicle arises out of and in the course of his employment "where the transportation is furnished by custom to the extent that it is incidental to and part of the contract of employment; or when it is the result of a continued practice in the course of the employer's business which is beneficial to both the employer and the employee." Id. at 720-21, 173 S.E.2d at 817; cf. LeWhite Constr. Co. v. Dunn, 211 Va. 279, 283, 176 S.E.2d 809, 812-13 (1970) (holding that "free transportation" provided for personal convenience, but without a corresponding benefit to the employer, does not fall within the exception).

It is not necessary that the employee be compensated for the time spent traveling to the worksite. Neither is it necessary that he be required by the employer to use the proffered transportation. Rather, the question is whether the practice was customary and conferred a benefit to both the employer and the employee. Here, the evidence is abundantly clear that such was the case.

Pertee, the foreman, Wimmer, and Thompson all testified that it was their usual practice to ride in Asplundh's company

16

truck from West Virginia to the day's worksite.  Pertee had been employed by Asplundh for five years and confirmed that this had been the practice throughout the time of his employment.  The benefit to Asplundh's employees is patent.  Thus, there was sufficient evidence for the chancellor to conclude that it was a customary practice for Asplundh to provide transportation to its employees and that Wimmer derived a benefit from that practice.

The chancellor also correctly concluded that Asplundh derived a benefit from its customary practice of providing transportation to its employees.  The evidence showed that Asplundh was required by its contract with the Virginia Department of Transportation to have a crew of a specific number available at the worksite before commencing work each day.  Asplundh was assured that it could comply with this requirement by transporting its employees in its vehicles that were designed to carry those crews as well as necessary equipment.

Accordingly, we hold that the chancellor correctly ruled that Wimmer's injuries arose out of and in the course of his employment at the time of the August 21, 2001 accident based upon Asplundh's customary practice of providing transportation to its employees.  Liability for such injuries was expressly excluded from the coverage provided in Pacific Employers' policy.  Thus, the chancellor's determinations that Pacific Employers is not liable under that policy and that Pacific

17

Employers is entitled to the return of the funds advanced by it to Asplundh to fund the settlement of those claims are also correct.

## CONCLUSION

For these reasons, we will affirm the judgment of the chancellor.

Affirmed.