NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2022 VT 9

No. 2021-136

| | |
|---|---|
| Roger Rodrigue & Tealla Rodrigue | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Orleans Unit, |
| | Civil Division |
| | |
| Vincent Illuzzi | December Term, 2021 |

Mary Miles Teachout, J.

William L. Durrell of Bookchin & Durrell, P.C., Montpelier, for Plaintiffs-Appellants.

John A. Serafino, Charles A. Romeo and Andrew H. Maass of Ryan Smith & Carbine, LTD., Rutland, for Defendant-Appellee.

PRESENT: Reiber, C.J.,[1] Eaton, Carroll and Cohen, JJ., Waples, Supr. J., Specially Assigned

¶ 1.    **EATON, J.**   This is a legal-malpractice case in which plaintiff Roger Rodrigue[2] claims defendant Attorney Vincent Illuzzi negligently advised plaintiff to sign a Vermont workers' compensation settlement that contained a general release barring recovery otherwise available from the third-party who injured him. Plaintiff appeals the trial court's dismissal of the entire original complaint for failure to state a claim, grant of summary judgment in favor of defendant

---

[1] Chief Justice Reiber was present for oral argument but did not participate in this decision.

[2] The suit was initially filed on behalf of Roger and wife Tealla Rodrigue but, as explained later, Tealla was dismissed as a party and so the opinion refers throughout to plaintiff singularly.

on an amended legal-malpractice claim, and denial of plaintiff's request for findings following summary judgment. We affirm.

¶ 2.    While a resident of Vermont, plaintiff entered into an employment contract with employer Enterprises Precision, Inc. in this state. In the course of this work, employer required plaintiff to travel to Virginia. Plaintiff was staying at a motel in Rhode Island working for employer at the time, so employer assigned coworker, another one of its employees, to drive plaintiff to and within Virginia. Employer provided coworker a car for this purpose. In Virginia, plaintiff and coworker both stayed at an employer-provided hotel and commuted together to their mutual jobsite. On September 2, 2014, coworker was driving plaintiff from their hotel to the jobsite and they were involved in a car accident; both men were injured.

¶ 3.    Plaintiff hired defendant to represent him in two workers' compensation claims before the Vermont Department of Labor, one of which was for the injuries he sustained as a passenger in the car accident in Virginia. In October 2016, defendant represented plaintiff at a mediation where both compensation claims were settled for a lump-sum payment of $115,000. Defendant advised plaintiff to sign an addendum to the settlement form that included general-release language, which stated in relevant part: "Claimant releases Defendants . . . and each and all of their respective past and present employees . . .[and] agents . . . from any and all liability for all claims arising out of the injury . . . ." The form also provided that the general release was to "be construed as broadly as possible to effectuate the purpose of releasing any and all claims."

¶ 4.    In 2017, plaintiff and wife hired a different attorney to pursue common-law tort claims against coworker for injuries plaintiff received in the 2014 accident, and they filed a complaint in federal court in Vermont. Coworker's counsel provided plaintiff's attorney with the settlement and general release that plaintiff signed. Coworker then filed an answer that did not raise any affirmative defenses, did not raise choice of law as a potential issue in the case, and cited

2

Vermont law. Nonetheless, plaintiff and wife voluntarily dismissed their complaint, believing the general release barred any third-party tort claim against coworker.

¶ 5. In May 2020, plaintiff and wife filed a complaint against defendant in Vermont superior court alleging professional negligence—the tort that encompasses legal malpractice—and violation of the Vermont Consumer Protection Act (CPA). In support of the professional-negligence claim, they alleged defendant advised plaintiff to sign the workers' compensation settlement containing the general release, that the general release was not required for the settlement, and that the release barred all plaintiff's and wife's third-party tort claims against coworker, which would have otherwise been available under Vermont workers' compensation laws.[3] For the consumer-protection claim, they asserted defendant engaged in unfair and deceptive practices and acted in bad faith in communicating with them.

¶ 6. Defendant moved to dismiss the professional-negligence claim for failure to state a claim for which relief could be granted, arguing plaintiff and wife could not show he caused their injuries. The trial court granted defendant's motion, concluding that Virginia law applied in the federal diversity case and that, even absent a release, the claim against coworker was barred under Virginia law. Defendant then filed a motion to dismiss wife as a plaintiff in the case, arguing there was no attorney-client relationship between her and defendant, and to dismiss the consumer-protection claim, because it was based on legal advice and opinions not subject to the CPA. The trial court granted the motion, dismissing both wife's claims and the consumer-protection claim for the reasons defendant argued.

¶ 7. To attempt to remedy the reasons for dismissal, before entry of judgment plaintiff moved to amend the complaint to remove wife as a plaintiff, remove the CPA claim, and add

_____

[3] Defendant debates whether this general release in fact barred any claims against coworker. The legal import of the release language does not affect the outcome of this case, and we therefore do not discuss it.

3

factual allegations to support the legal-malpractice claim. The trial court granted plaintiff's motion, and he filed an amended complaint accordingly. Following discovery, defendant moved for summary judgment and filed a statement of undisputed material facts. Plaintiff opposed defendant's motion but did not contest defendant's statement of facts. In the summary-judgment motion, defendant again argued that plaintiff could not establish a prima facie case for professional negligence because, as a matter of law, he could not prove defendant had caused his injuries. In support, he argued third-party tort claims against coworkers, such as plaintiff's, are barred under Virginia workers' compensation laws. Plaintiff countered that Vermont law, which permits such claims, applied in the underlying case, and that even if Virginia law applied, his claim would not have been barred as a matter of law based on the undisputed facts. The trial court granted defendant's motion for summary judgment "based on the analysis set forth in defendant's motion and reply memoranda." The court did not state its findings or provide further explanation for its decision.

¶ 8. Noting the trial court's failure to state its findings of fact and conclusions of law in granting defendant's summary-judgment motion, plaintiff filed a motion for findings pursuant to Vermont Rule of Civil Procedure 52. The trial court denied this request as moot, explaining that it was not called upon to make findings of fact when granting defendant's motion for summary judgment.

¶ 9. On appeal, plaintiff argues the trial court erred in three ways: granting defendant's motions to dismiss; granting defendant's motion for summary judgment; and denying plaintiff's request for findings. We conclude that the trial court properly granted defendant's motion for summary judgment because plaintiff could not establish defendant caused his alleged injuries as a matter of law. Furthermore, because summary judgment in favor of defendant was proper, if there was any error in dismissing the original claim for professional negligence or wife's claims, it was harmless. Turning to the CPA claim, we conclude that it was properly dismissed because the

4

statute does not regulate the conduct alleged in the complaint. Finally, we hold that the trial court was not required to make findings pursuant to defendant's Rule 52 request. We therefore affirm.

## I. Motion for Summary Judgment

¶ 10. We review a trial court's decision on a motion for summary judgment without deference, which shall be granted where "there is no genuine dispute of material fact and judgment is appropriate as a matter of law." Hum. Rts. Def. Ctr. v. Correct Care Sols., LLC, 2021 VT 63, ¶ 8, __ Vt. __, 263 A.3d 1260; V.R.C.P. 56(a).

¶ 11. To succeed in a legal-malpractice case, a plaintiff must show that "(1) the attorney owed a professional duty of care to the client; (2) the attorney breached the duty; (3) the attorney's act was a proximate cause of the client's injury; (4) and that the client suffered damages as a result of the injury." Sachs v. Downs Rachlin Martin PLLC, 2017 VT 100, ¶ 17, 206 Vt. 157, 179 A.3d 182. At issue in this case is the third element—causation. To establish proximate cause, a plaintiff must "prove it is more likely than not that, but for the attorney's negligent conduct, the plaintiff would not have been harmed." Id. ¶ 19. In this case, plaintiff must show that but for the general release, his negligence claim against coworker would have succeeded.

¶ 12. Because of differences in the substantive law, the potential viability of plaintiff's underlying negligence claim against coworker depends on whether the law of Virginia or Vermont applies to the claim. As explained more fully below, when a choice-of-law issue is raised, our inquiry begins with whether there is a conflict between the laws of the relevant states. If there is a conflict, we then apply choice-of-law principles to determine which state's law applies.

### A. Presence of a Conflict

¶ 13. In diversity actions, federal courts determine the governing law by looking to the forum state's choice-of-law principles. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). The threshold question in choice-of-law analysis is whether a conflict exists. See Havill v. Woodstock Soapstone Co., 172 Vt. 625, 627, 783 A.2d 423, 427 (2001) (mem.) (explaining that

5

we avoid choice-of-law questions where application of laws of both jurisdictions would produce same result). The parties do not dispute that plaintiff's common-law negligence claim against coworker was available under Vermont law. See 21 V.S.A. § 624 (providing that exclusive-remedy provision in Vermont workers' compensation act does not preclude common-law claims against coworkers); Libercent v. Aldrich, 149 Vt. 76, 79, 539 A.2d 981, 983 (1987) ("Third-party suits against co-employees are supported by both the plain language of § 624(a) and by the argument that existing rights of action should not be deemed destroyed in the absence of clear language." (quotation omitted)).

¶ 14. In contrast, Virginia law would bar plaintiff's common-law negligence claim against coworker. Generally, in exchange for recovery of workers' compensation benefits without regard to fault for employees injured on the job, workers' compensation acts contain "exclusive-remedy" provisions, which make the receipt of compensation benefits the only remedy for the injured worker against entities falling under the scope of the provision. 3 A. Larson & L. Larson, Larson's Workers' Compensation Law § 100.01(1) (Desk Ed. 2000). Virginia's workers' compensation act contains an extremely broad exclusive-remedy provision and states that when an employer and employee are bound by its provisions, "all other rights and remedies" of the injured employee shall be excluded. Va. Code Ann. § 65.2-307(A). The Virginia exclusive-remedy provision applies when an employee is injured by a coemployee and prevents the employee from maintaining a common-law action for negligence against the coemployee. See Feitig v. Chakley, 38 S.E.2d 73, 75 (Va. 1946).

¶ 15. Plaintiff contends that his tort claims were not barred because either of two exceptions to the exclusive-remedy provision in Virginia law applied: when the tortfeasor is a stranger to the work being undertaken, and the coming-and-going exception. Neither exception applies given the undisputed facts of this case. Under the first exception raised, an injured employee may still maintain a common-law tort action against a third party if the third party is a

"stranger to the work." David White Crane Serv. v. Howell, 714 S.E.2d 572, 575 (Va. 2011) (quotation omitted). The Virginia exclusive-remedy statute's purpose is "to bring within its operation all persons who are engaged in the trade, business[,] or occupation of the contractor who engages to perform the work." Id.

¶ 16. In this case, plaintiff and coworker have the same employer and were both in Virginia for the purpose of completing work for that employer. They arrived in the state together to conduct this work, stayed in the same employer-provided accommodations, and worked at the same jobsite daily. Furthermore, part of coworker's assignment was to drive plaintiff for this work in a vehicle provided by employer. All these facts support the conclusion that coworker was engaged in the occupation of employer, and thus he was not a stranger to the work. See id. Contrary to plaintiff's assertions, this conclusion stands regardless of whether plaintiff calls coworker an agent instead of a coemployee in its filings. See Lucas v. Biller, 130 S.E.2d 582, 586 (Va. 1963) ("It is immaterial whether the defendant was an independent contractor or a fellow-servant of the plaintiff since he was engaged in the business of the plaintiff's employer when her injuries were sustained.").

¶ 17. Plaintiff's case also falls outside the coming-and-going exception to the exclusive-remedy provision of Virginia's workers' compensation act. "[G]enerally, an employee's injuries sustained while going to or coming from work are not compensable under [Virginia's] Workers' Compensation Act," and therefore its exclusive-remedy provisions would not apply. Provident Life & Acc. Ins. Co. v. Barnard, 372 S.E.2d 369, 371 (Va. 1988). Although plaintiff was injured on the way to the work site, which would seemingly make his injuries not compensable and allow a claim against coworker, the coming-and-going rule does not apply when "the employee is furnished transportation to or from his work by the employer and is accidentally injured during the course of travel." Lucas, 130 S.E.2d at 586. This exception to the coming-and-going rule applies under the following circumstances:

7

when such transportation is the result of an express or implied agreement between the employer and his employee; or where the transportation is furnished by custom to the extent that it is incidental to and part of the contract of employment; or when it is the result of a continued practice in the course of the employer's business which is beneficial to both the employer and the employee.

Bristow v. Cross, 173 S.E.2d 815, 817 (Va. 1970).

¶ 18. The facts of Bristow are instructive for the application of this exception to the coming-and-going rule. In that case, the plaintiff and a coworker were employed for the same company. The plaintiff was instructed to go to the coworker's home in the morning and that the coworker would drive him in a company truck to the office, and then from the office to the day's jobsite. En route to the office on the plaintiff's first day on the job, the truck was involved in an accident. The Virginia Supreme Court explained that though no express agreement was negotiated between the plaintiff and the employer, the accident in this case arose out of the plaintiff's employment and thus fell under the transportation exception to the coming-and-going rule. Id. at 816-18. As a result, the injured worker had no tort claim against the employer or his coworkers as the exclusive-remedy provisions of Virginia's workers' compensation act applied. In so holding, the court first focused on the existence of an arrangement made in advance of the commute whereby the employer provided and controlled the vehicle used, even though the plaintiff was not required to accept the arrangement for company transportation and was not paid during the commute to the office. Id. at 817. It then turned to the fact that the arrangement was mutually beneficial to the employer and the plaintiff because the plaintiff's presence at the job was assured for the employer while the expense and trouble of finding transportation was saved for the plaintiff. Id. at 817-18.

¶ 19. Similarly, in Asplundh Tree Expert Co. v. Pacific Employers Insurance Co., an employer permitted its employee to drive a company truck to transport crew members to and from their worksite each day. 611 S.E.2d 531, 532 (Va. 2005). Although crew members were not

required to use the company truck, they knew they could show up at the arranged meeting site each morning to get a ride to work. While travelling to the worksite, the truck was involved in an accident and the crew-member passengers were injured. The Supreme Court of Virginia emphasized that "[i]t is not necessary that the employee be compensated for the time spent traveling to the worksite" or that the employee "be required by the employer to use the proffered transportation." Id. at 537. It found that the usual practice of employees riding in a company truck driven by a company employee for the purpose of transporting employees to a jobsite was sufficient to demonstrate a customary practice. Id. It then concluded that the employer and the crew members both derived a benefit from this arrangement, the injured worker's claim was compensable, and tort claims against the employer and coworkers were barred. Id.

¶ 20. Like in Bristow and Asplundh, employer of plaintiff and coworker owned the car used and prearranged all the transportation for plaintiff by assigning coworker to drive him to and around Virginia to complete his employment duties. The mutual benefit is also comparable. Employer needed to get plaintiff to Virginia and then transport him between accommodations— that employer chose—and the jobsite, as plaintiff did not have a car because coworker had driven him to the state. See Bristow, 173 S.E.2d at 817 (noting employee did not have operable car). Necessarily, plaintiff benefitted from receiving free transportation where he had none. See id. at 817 (stating that employees were "saved the expense and trouble of providing their own transportation"); see also Asplundh Tree Expert Co., 611 S.E.2d at 537 (explaining that benefit to employees "patent" where they were provided free transportation to jobsite). The decisions in these two cases preclude any argument that plaintiff's injury was not compensable under Virginia's workers' compensation act because it occurred while plaintiff was "coming and going." Plaintiff was using employer-provided transportation when injured and thus was not "coming and going."

¶ 21. Plaintiff argues the appropriate coming-and-going test in this case is "whether the practice was customary and conferred a benefit to both the employer and the employee," and

asserts that there are no facts to support whether the arrangement in this case was customary or conferred a benefit on both plaintiff and employer. This fixation on a supposed lack of evidence of "custom" ignores the existence of an agreement and the rule as explained in Bristow. See 173 S.E.2d at 817 (describing examples of exception as involving custom or agreement or mutually beneficial practice, and concluding exception applied without discussion of custom). Though a customary practice may be industry-wide, see Lucas, 130 S.E.2d at 584, Virginia courts have found the transportation exception to the coming-and-going rule applies where there is a practice or prearrangement particular to the situation of the employee and employer. See Bristow, 173 S.E.2d at 817; Asplundh Tree Expert Co., 611 S.E.2d at 537. Plaintiff also glosses over the underlying principle of the test: whether the employee's undertaking at the time of the accident causing his injury "arose out of and in the course of his employment." Kent v. Virginia-Carolina Chem. Co., 129 S.E. 330, 331 (Va. 1925). That test as applied in Virginia precedent is indisputably met in this case. Therefore, under Virginia law, plaintiff did not have a viable common-law tort claim against coworker.

## B. Applying Choice-of-Law Principles

¶ 22. Having established that there is a conflict between Vermont's and Virginia's workers' compensation laws, including their exclusive-remedy provisions, we move on to determine which state's laws applied to determine if the underlying tort action was viable. We conclude Virginia law applied in plaintiff's federal diversity case against coworker and thus the claim against the coworker was barred by the exclusive-remedy provision of Virginia's workers' compensation act.

¶ 23. Vermont has adopted the approach in the Restatement (Second) of Conflict of Laws for assessing choice-of-law questions in tort actions. Amiot v. Ames, 166 Vt. 288, 292, 639 A.2d 675, 677 (1997). Under the Restatement, the "law of the state where the injury occurred" applies in a personal-injury action "unless, with respect to the particular issue, some other state has a more

10

significant relationship" to the occurrence or the parties. Restatement (Second) of Conflict of Laws § 146 (1971); see also McKinnon v. F.H. Morgan & Co., Inc., 170 Vt. 422, 424, 750 A.2d 1026, 1028 (2000) (explaining that relevant rule is specific section of Restatement applicable to type of action in dispute). Here, the injury occurred in Virginia and therefore its law applied absent some other significant relationship.

¶ 24. To assess whether a more significant relationship exists, we look to the following broad principles:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(2). We also consider the following contacts specifically applicable to tort cases:

> (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.

Id. § 145(2). We apply these principles to the undisputed facts without deference. Miller v. White, 167 Vt. 45, 47-48, 702 A.2d 392, 393 (1997).

¶ 25. The injury in this personal-injury claim occurred in Virginia, so a presumption in favor of Virginia law applies. See Restatement (Second) of Conflict of Laws § 146. Plaintiff did not contend below and does not argue on appeal that any of the general principles in Restatement § 6 overcome this presumption such that Vermont has a more significant relationship to the case, and he has not analyzed any of these choice-of-law principles. See McKinnon, 170 Vt. at 424, 750 A.2d at 1028 (stating law of place of injury applies in personal injury cases "unless plaintiff

11

demonstrates that Vermont's interests in the litigation override the place-of-injury presumption"). Furthermore, several factors specific to personal-injury cases weigh in favor of applying Virginia law. In addition to plaintiff's injuries occurring in Virginia, the conduct causing the injuries—coworker's driving—also occurred there. See Restatement (Second) of Conflict of Laws § 145(2)(a)-(b). The relationship between plaintiff and coworker is centered in Virginia because coworker was assigned to transport plaintiff to and within Virginia, which he had done, and they were both working and staying in that state for their mutual employer at the time of injury. See id. § 145(2)(d). The final factor can be read in favor of either Vermont or Virginia law, as plaintiff is a Vermont resident, but coworker was a resident of Canada temporarily staying in Virginia for work. See id. § 145(2)(c). Taken together, these specific choice-of-law considerations bolster the presumption in favor of applying Virginia law. We therefore conclude Vermont does not have a more significant interest to override the presumption that the law of the place where the injury occurred governs. See Martineau v. Guertin, 170 Vt. 415, 417, 751 A.2d 776, 778 (2000) (explaining that more-significant-relationship analysis serves as "escape valve in situations when applying the specific, presumptive sections would make little sense").

¶ 26. Plaintiff raises two arguments against the application of Vermont's choice-of-law principles to the underlying case. Neither is availing. First, he asserts that coworker implicitly acquiesced to the application of Vermont law in the federal diversity case by failing to raise choice of law as an issue in his responsive pleading. Second, he proposes the Vermont workers' compensation act applies to his common-law negligence claim against his coworker.

¶ 27. We reject plaintiff's argument that Vermont law applied in the federal diversity action because coworker failed to raise choice of law as an issue and cited Vermont law in his first responsive pleading. Plaintiff cites ample Second Circuit cases concluding that the parties in a diversity case "implicitly acquiesced" to the application of the forum state's law when no party raised choice of law as an issue. Soojung Jang v. Trs. of St. Johnsbury Acad., 331 F. Supp. 3d

12

312, 330 (D. Vt. 2018); see, e.g., <u>Bennett v. Sterling Planet, Inc.</u>, 546 F. App'x 30, 33 (2d Cir. 2013) ("In a diversity case, where the parties have agreed to the application of the forum law—as evidenced by reliance on that law in the parties' briefing, as in this case—their agreement ends the choice-of-law inquiry."). However, plaintiff does not cite, and we do not find, any case in the Second Circuit that establishes choice of law is an issue that must be raised during a defendant's first responsive pleading such that coworker would have been precluded from arguing it in the federal diversity case had it proceeded. See <u>Reed Constr. Data Inc. v. McGraw-Hill Cos.</u>, 49 F. Supp. 3d 385, 423 (S.D.N.Y. 2014) ("Courts, though, do not generally hold the choice-of-law determination to have been waived until a late stage in litigation, such as at the point of making summary judgment motions." (quotation omitted)).

¶ 28.    Plaintiff also asserts that because Vermont's workers' compensation act does not preclude a common-law action against a third party, Vermont's laws must apply to his negligence claim against coworker, thus creating a "statutory right" to sue coworker. This argument ignores the rule explained and applied above that, when the laws of two states potentially apply, we determine whether a conflict exists and conduct choice-of-law analysis before applying Vermont law. See <u>Klaxon Co.</u>, 313 U.S. at 496 (explaining that courts sitting in diversity jurisdiction apply forum state's choice-of-law analysis). It also stretches Vermont's workers' compensation provisions beyond recognition. The purpose of § 624 is "to preserve the injured workers' common law rights of action" against third parties, such as plaintiff's common-law negligence claim against coworker. <u>Libercent v. Aldrich</u>, 149 Vt. 76, 80, 539 A.2d 981, 983 (1987). However, in preserving such common-law claims, the statute does not purport anywhere to create a cause of action; it simply governs election of remedies under Vermont law. See 21 V.S.A. § 624(a) (stating that accepting compensation under statute "shall not act as an election of remedies").[4]

---

[4]    Plaintiff proposes that defendant's filing a claim under Vermont's workers' compensation laws for payment from employer was unethical if he believed Virginia law applied.

13

¶ 29. For the reasons explained above, we conclude Virginia law applied and barred plaintiff's negligence claim against coworker in the federal court action. Because plaintiff's negligence claim against coworker was not viable as a matter of law, regardless of the existence of the general release, plaintiff cannot prove defendant's counselling plaintiff to execute the release documents caused plaintiff any injuries. Therefore, defendant was entitled to summary judgment.[5]

## II. Motions to Dismiss

¶ 30. Turning to the decisions granting defendant's motions to dismiss, we conclude that two of the dismissals, if in error, were harmless and that one dismissal was proper as a matter of law. We review motions to dismiss de novo and "will uphold a motion to dismiss for failure to state a claim only if it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." Birchwood Land Co. v. Krizan, 2015 VT 37, ¶ 6, 198 Vt. 420, 115 A.3d 1009 (quotation omitted). Accordingly, we assume that the facts pleaded and reasonable inferences from those facts are true, and that any contrary facts or inferences asserted in defendant's pleadings are false. Heffernan v. State, 2018 VT 47, ¶ 7, 207 Vt. 340, 187 A.3d 1149.

¶ 31. Because we affirm the trial court's grant of summary judgment on the professional-negligence claim as presented in the amended complaint, including the additional allegations supporting the claim, any error in dismissing the original claim for professional negligence is harmless. See Burnell v. Maloney, 39 Vt. 579, 584 (1867) ("The principle is well settled that when the rulings of the court below are erroneous on some points, if correct rulings on the same points would necessarily have produced the same result, this court will not reverse the judgment for such errors."). Similarly, assuming without deciding that the dismissal of wife as a plaintiff was in

---

This argument has no bearing on our determination of what law would have applied in the underlying common-law negligence case against coworker and we therefore do not consider it.

[5] Because we conclude defendant was entitled to summary judgment, we do not reach defendant's argument that the trial court improperly allowed plaintiff to amend his complaint. Accordingly, all of plaintiff's counterarguments are moot and are also not considered.

error, it was harmless because her derivative loss-of-consortium claim in the underlying action against coworker could not have succeeded where her husband's negligence claim failed. See Derosia v. Book Press, Inc., 148 Vt. 217, 220, 531 A.2d 905, 907 (1987) (explaining that loss of consortium is derivative action and "is dependent upon the success of the underlying tort claim").[6] Therefore she, like plaintiff, could not have established defendant caused her injuries had she remained a plaintiff in the case.

¶ 32.   On the merits, the CPA claim was also properly dismissed because the facts underlying plaintiff's and wife's claim involved the provision of legal advice rather than entrepreneurial conduct.  The CPA forbids "unfair or deceptive acts or practices in commerce."  9 V.S.A. § 2453(a) (emphasis added).  Commercial aspects of the law "include advertising, billing and collection practices, fee arrangements, and methods of obtaining, retaining, and dismissing clients."  Kessler v. Loftus, 994 F. Supp. 240, 243 (D. Vt. 1997).  Legal representations "are generally not actionable under the Consumer Fraud Act if they are the product of the defendant's professional judgment based upon his legal knowledge and skill."  Webb v. Leclair, 2007 VT 65, ¶ 23, 182 Vt. 559, 933 A.2d 177 (mem.) (quotation omitted).[7]  An expression of professional opinion may be "actionable where the defendant misrepresents his opinion as part of a scheme to defraud the plaintiff, such as where he intentionally misstates an estimate of cost in order to induce the plaintiff to hire him."  Id. ¶ 24 (quotation omitted).

---

[6] The parties do not raise whether Vermont or Virginia law applied to wife's derivative loss-of-consortium claim; however, we note that there is no choice-of-law issue.  Virginia abrogated loss of consortium by statute, thereby eliminating any recovery for wife under Virginia law.  Va. Code Ann. § 55-26 (1950) (current version at Va. Code Ann. § 55.1-201 (2019)).  Thus, there is no conflict between Vermont and Virginia law on wife's claim, and we apply Vermont law.  See Woodstock Soapstone Co., 172 Vt. at 627, 783 A.2d at 427 (explaining that we avoid choice-of-law questions where application of laws of both jurisdictions would produce same result).

[7] The Legislature changed the name of the statute from the Consumer Fraud Act to the Consumer Protection Act in 2012.  See 2011, No. 109 (Adj. Sess.).

¶ 33. The complaint alleged defendant "[a]cted in bad faith in communicating with [plaintiff and wife]" and on appeal plaintiff asserts this allegation sufficiently demonstrates a misrepresentation of fact occurred to defeat a motion to dismiss.[8] However, courts are not required to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." Colby v. Umbrella, Inc., 2008 VT 20, ¶ 10, 184 Vt. 1, 955 A.2d 1082 (quotation omitted). Although the complaint alleged defendant acted in "bad faith" when communicating with plaintiff and wife, the underlying conduct asserted is defendant's advice to sign the settlement agreement that contained general-release language. Advising a client to sign an agreement is a professional judgment constituting a legal opinion and nothing in the complaint alleges that this legal opinion was provided to fraudulently induce plaintiff and wife for defendant's commercial benefit. See Kessler, 994 F. Supp. at 243 (explaining that "commercial, entrepreneurial aspects of law include advertising, billing and collection practices, fee arrangements, and methods of obtaining, retaining, and dismissing clients"); see also Winey v. William E. Dailey, Inc., 161 Vt. 129, 133, 636 A.2d 744, 747 (1993) (holding opinion may be actionable under CPA when it is part of "scheme to defraud" plaintiff). Because plaintiff only alleged defendant provided him with poor advice when it came to the general release and does not put forth any allegation that defendant's "bad faith" communications were commercial in nature, this claim must fail.

### III. Motion for Findings

¶ 34. Finally, we address plaintiff's motion for findings under Rule 52. We review the trial court's interpretation of a procedural rule de novo. Weitz v. Weitz, 2019 VT 35, ¶ 7, 210 Vt. 248, 213 A.3d 1102. Findings of fact and conclusions of law are required, upon proper request, when the decision on a motion is "based upon a contested issue of fact" and "is or could be

---

[8] We assume without deciding that wife could maintain a claim against defendant, because it does not impact our analysis.

16

dispositive of a claim or action." V.R.C.P. 52(a)(3). Here, the summary-judgment order fell outside the scope of Rule 52.

¶ 35. A decision granting summary judgment, though dispositive, is not "based upon a contested issue of fact." V.R.C.P. 52(a)(3). Summary judgment is only appropriate when there is "no genuine dispute as to any material fact." V.R.C.P. 56(a); see also In re Lowry, 2013 VT 85, ¶ 10, 195 Vt. 14, 84 A.3d 816 ("Courts are not empowered to try issues of fact on a [summary judgment] motion." (quotation omitted)). Our precedent is clear that stating findings of fact and conclusions of law to facilitate appellate review is advisable but "not necessary" when granting summary judgment. Blake v. Nationwide Ins. Co., 2006 VT 48, ¶ 21, 180 Vt. 14, 904 A.2d 1071; see also Crosby v. Great Atl. & Pac. Tea Co., 143 Vt. 537, 539, 468 A.2d 567, 569 (1983) (per curiam) (explaining that "findings of fact" for granting summary-judgment motion would "merely include precise statements delineating the facts that exist without substantial controversy" (quotations omitted)).

¶ 36. Plaintiff's arguments to the contrary are meritless. He cites various cases explaining the trial court's duty to find facts to support its conclusions; however, these cases did not involve granting a summary-judgment motion. Plaintiff also points to the 1990 Amendment to Rule 52 which removed language stating findings were "unnecessary on decisions on motions under Rules 12 and 56." Reporter's Notes—1990 Amendment, V.R.C.P. 52; see Filter Equip. Co. v. Int'l Bus. Machs. Corp., 142 Vt. 499, 503, 458 A.2d 1091, 1093 (1983) (stating that Reporter's Notes are "not binding upon the Court" but that they "have a persuasive effect similar to that of legislative history"). This is unpersuasive for two reasons. One, it ignores the full context of the 1990 Amendment, which removed the statement that findings were "unnecessary on decisions on motions under Rules 12 and 56 or any other motion except as provided in Rule 41." Reporter's Notes—1990 Amendment, V.R.C.P. 52. This was done because the language implied a broader application than the rule intended and therefore no longer furthered "the fundamental goals of

17

these rules." Id. In other words, the 1990 Amendment did not demonstrate that Rule 52 was amended to require findings for all motions under Rules 12 and 56. Two, there is case law following the 1990 Amendment stating findings under Rule 52 are not necessary when a motion for summary judgment is granted. See, e.g., Blake, 2006 VT 48, ¶ 21.

¶ 37. Finally, plaintiff states that there were insufficient facts to support the application of the coming-and-going rule in this case and that this absence is equivalent to a contested issue of fact under Rule 52. To the contrary, application of the coming-and-going rule to the uncontested facts of this case to determine whether judgment as a matter of law was appropriate is a legal question—one we resolved above when we concluded defendant was entitled to summary judgment. See supra, Part I.

## IV. Conclusion

¶ 38. In sum, Virginia law applied to the underlying negligence claim and would have precluded plaintiff from recovering against coworker regardless of the existence of the general release. For this reason, summary judgment in favor of defendant was proper, and assuming, without conceding, dismissal of the original complaint for professional negligence and wife as a plaintiff were in error, it was harmless. The CPA claim was correctly dismissed because defendant's alleged conduct was not entrepreneurial in nature. Finally, the trial court did not err in denying plaintiff's motion for findings.

Affirmed.

FOR THE COURT:

_____

Associate Justice